■ St. Patrick's Home for the Aged and Infirm, Respondent, v Laticrete International, Inc., Appellant, et al., Defendants. St. Patrick's Home for the Aged and Infirm, Respondent-Appellant, v Laticrete International, Inc., Appellant-Respondent, and Lehrer McGovern Bovis, Inc., et al., Respondents. [696 NYS2d 117] —Order, Supreme Court, Bronx County (Luis Gonzalez, J.), entered June 22, 1998, which, to the extent appealed from, denied defendant Laticrete's motion for summary judgment dismissing plaintiff's fourth and fifth causes of action for fraud and violations of General Business Law §§ 349 and 350, respectively, denied its motion for dismissal of all cross claims asserted by defendants-respondents and granted plaintiff's motion to amend its complaint to add a cause of action for breach of warranty and a request for punitive damages, and to the extent cross-appealed from, granted Laticrete's motion to dismiss the second cause of action for negligent misrepresentation, unanimously modified, on the law, to the extent of dismissing the fourth and fifth causes of action and denying plaintiff's request for punitive damages, and otherwise affirmed, without costs.

Order, Supreme Court, Bronx County (Michael DeMarco, J.), entered on or about January 8, 1999, insofar as it denied Laticrete's renewed motion to dismiss plaintiff's remaining causes of action, unanimously dismissed, without costs, as academic.

Plaintiff St. Patrick's Home for the Aged and Infirm commenced this action in 1994 for damages resulting from the defective construction and installation of the exterior walls of its eight-story nursing home in the Bronx. Defendant Laticrete International, Inc. (Laticrete) was the manufacturer of the exterior wall panels, which were marketed as components of the "Laticrete Panel System" (LPS). Plaintiff hired defendant Lehrer McGovern Bovis (LMB) as construction manager for the project and defendant Anzelmo and Lombardo A.I.A., P. C. (A&L) as the project architect. Laticrete supplied the wall panels to the installer, Panelized Systems Ltd. (PSL), which was also hired by plaintiff, but is not a party to this action. Laticrete itself had no contract with plaintiff.

The exterior walls were installed in 1988 and they began

leaking during the spring of 1991.* Eventually, the wall panels warped and detached from the metal supports apparently due to the water incursion. PSL contacted Laticrete in May 1991 about the leaks and asserted that the backer board used in the Laticrete wall panels was an inferior product known as Duripanel. Laticrete responded that the product it had supplied was its Laticrete EP Board (EP Board), which was suitable for use at St. Patrick's, and that Duripanel did not meet its requirements. Apparently, the EP Board was a version of Duripanel that had been improved by adding an epoxy resin coating. The parties convened a meeting in 1992 to discuss the problem, and Laticrete confirmed that its product was suitable for the project but agreed to provide assistance in determining the cause of the leaks. The gravamen of plaintiff's claims is that Laticrete misrepresented the composition of the backer board and its suitability for use at St. Patrick's, and that it concealed complaints about the product and the existence of a warranty.

At issue on this appeal is the validity of four of the six causes of action asserted by plaintiff against Laticrete in its 1994 complaint and 1997 amended complaint. The first three causes of action for negligence, negligent misrepresentation and strict products liability were dismissed by the IAS Court on Statute of Limitations grounds. On appeal, plaintiff challenges only the dismissal of the negligent misrepresentation claim. The IAS Court denied Laticrete's motion to dismiss the fourth cause of action for fraud and the fifth cause of action alleging violations of General Business Law §§ 349 and 350. The court also granted plaintiff's cross motion to amend the complaint to add a sixth cause of action for breach of warranty and a request for punitive damages. It further denied Laticrete's motion to dismiss LMB and A&L's cross-claims for contribution and indemnification. Laticrete's second summary judgment motion, raising many of the same arguments from its first motion, was also denied.

The fourth cause of action sounds in fraud. While the Statute of Limitations for fraud actions is six years (CPLR 213 [8]), we are constrained to dismiss this claim as untimely based upon the holding in *New York Seven-Up Bottling Co. v Dow Chem. Co.* (96 AD2d 1051, *affd for reasons stated* 61 NY2d 828). The facts of that case are strikingly similar to the present case and that decision governs. In *Seven-Up*, the plaintiff

---

* Apparently, leaks in the roof and windows were discovered in 1989, but these leaks were resolved. The record does not establish any connection between these leaks and the leaking of the wall panels in 1991.

sued the manufacturer and marketer of allegedly defective styrofoam insulation which was installed in the roof of plaintiff's bottling plant. The roof began leaking and plaintiff asserted causes of action in both strict products liability and fraud. The manufacturer moved to dismiss both causes of action on Statute of Limitations grounds. In reversing Supreme Court's denial of the motion, the Second Department held that the 3-year Statute of Limitations for strict products liability governed *both* causes of action since the allegations of fraudulent misrepresentations as to the suitability of the product were merely incidental to the products liability claim. It stated that the six-year fraud Statute of Limitations could be invoked only "when there would be no injury but for the fraud [citation omitted]" (*New York Seven-Up Bottling Co. v Dow Chem. Co.*, *supra*, at 1053). Here, as in *Seven-Up*, plaintiff was injured first and foremost by the alleged defects in the product, and the additional allegation that defendant knew its product was defective does not entitle plaintiff to the longer limitations period (*supra*; *see also*, *Queensbury Union Free School Dist. v Jim Walter Corp.*, 101 AD2d 992, 993, *affd* 64 NY2d 964).

The products liability cause of action accrued at the time of injury (*see*, *Victorson v Bock Laundry Mach. Co.*, 37 NY2d 395), and plaintiff concedes that the injury occurred in 1988 when the product was installed. As the Statute of Limitations in product liability actions is three years (CPLR 214 [4]), and plaintiff's 1994 action was commenced more than three years after the accrual date, it is barred by the Statute of Limitations.

Moreover, plaintiff has failed to show that Laticrete made any material misrepresentations or omissions upon which it relied, which are essential elements of a fraud claim (*see*, *New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318). Although Laticrete concedes that it represented in its product literature that its product was suitable for installation in plaintiff's building, plaintiff itself does not show reliance on this general representation. Nor is there any evidence that Laticrete misrepresented that its EP Board did *not* contain Duripanel, or that the EP Board was wholly different from Duripanel. Although plaintiff alleges that Laticrete actively concealed the composition of its EP Board, there is no indication that plaintiff or anyone else ever inquired as to the make-up or suitability of the Laticrete EP Board. The statement made by Laticrete's president during discovery that he would not recommend Duripanel for the St. Patrick's project does not, as plaintiff suggests, constitute an admission that Laticrete marketed a defec-

tive product. Rather, it merely demonstrates Laticrete's belief that Duripanel, if used by itself, was unsuitable for this project.

Plaintiff's General Business Law claims must likewise be dismissed. To establish prima facie violation of General Business Law § 349, a plaintiff must demonstrate that the defendant is engaging in consumer-oriented conduct which is deceptive or misleading in a material way, and that the plaintiff has been injured because of it (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank,* 85 NY2d 20, 25). Deceptive acts or practices may be defined as representations or omissions "likely to mislead a reasonable consumer acting reasonably under the circumstances" (*supra,* at 26). A similar showing is required under General Business Law § 350, which prohibits false advertising.

Plaintiff failed to meet the threshold requirement of General Business Law § 349 because Laticrete's sale of the EP Boards to PSL did not constitute consumer-oriented conduct (*see, New York Univ. v Continental Ins. Co., supra,* at 321). The transaction in this case was a sizable one between two companies in the building construction and supply industry. It did not involve any direct solicitation by Laticrete, which had no contact with the plaintiff, the ultimate consumer. Significantly, sophisticated business entities such as LMB, A&L and PSL acted in an intermediary role in the transaction, thereby reducing any potential that a customer in an inferior bargaining position would be deceived. In short, this was not the type of "modest" transaction that the statute was intended to reach (*Teller v Bill Hayes, Ltd.,* 213 AD2d 141, 147, *lv dismissed in part and denied in part* 87 NY2d 937), but rather a private dispute between plaintiff and a supplier over a defective product (*see, New York Univ. v Continental Ins. Co., supra,* at 321).

Plaintiff's prima facie case would also fail because there is no proof of a deceptive act or practice. While Laticrete's failure to disclose that Duripanel was a component of EP Board may have been less than candid, it cannot, as a matter of law, be found deceitful because there is no evidence in the record to refute Laticrete's assertion that it believed that the epoxy resin coating rendered Duripanel suitable for exterior use.

Whether Laticrete's failure to disclose the existence of other customer complaints against its product is fraudulent depends upon the volume and accuracy of those complaints. Nondisclosure of a single, unsubstantiated allegation of product failure is not sufficient. On the other hand, concealment of scores of complaints about the defective nature of a product

would clearly approach fraud. For example, in *Young v Robert-shaw Controls Co.* (104 AD2d 84, 87), a viable fraud action was found to exist where the defendant manufacturer must have been aware that its product was defective and dangerous because of 100 accidents and 32 deaths resulting from its use. Here, the record establishes only four complaints or claims regarding the LPS system, which does not in and of itself rise to a fraudulent failure to disclose.

As none of plaintiff's allegations disclose a deceptive act or practice under General Business Law § 349 or false advertising under General Business Law § 350, the General Business Law claims are insufficient on their face and are dismissed. In light of this determination, it is unnecessary for us to decide whether the General Business Law claims are barred by the Statute of Limitations.

The IAS Court properly granted plaintiff leave to amend the complaint to add a cause of action for breach of warranty. This is proper, not because of any equitable estoppel, but because the warranty here was one for future performance. Laticrete concedes that it provided an express 5-year warranty that the LPS would "be free from manufacturing defects and will not break down or deteriorate for a period of 5 years from the date of installation when installed in accordance with Laticrete's written specifications." It is further undisputed that this warranty was made a specification in the construction management agreement between plaintiff and LMB, and is mentioned in plaintiff's 1994 complaint. While plaintiff claims that Laticrete concealed the existence of the warranty and engaged in obstruction and delay, the facts do not support any equitable estoppel theory. Plaintiff is charged with the knowledge of a warranty in an agreement to which it was a party, and there is no obligation for the warrantor to invite suit. It was plaintiff's own failure to investigate and assert its rights under the warranty that caused the delay in instituting a warranty cause of action. Equitable estoppel is thus inapplicable.

Nonetheless, we conclude that a breach of warranty cause of action can be timely interposed. Under UCC 2-725 (1), the Statute of Limitations for the breach of any contract for sale is four years after the cause of action has accrued. With respect to a breach of warranty, UCC 2-725 (2) provides that such a cause of action accrues "when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

A warranty of future performance is one that guarantees that the product will work for a specified period of time (*see, e.g., Dormitory Auth. v Baker of N. Y.*, 218 AD2d 515, 517). Warranties to repair or replace the product in the event that it fails to perform, without any promise of performance, do not constitute warranties of future performance (*see, Hull v Moore's Mobile Homes Stebra*, 214 AD2d 923, 924; *Liecar Liqs. v CRS Bus. Computers*, 205 AD2d 868, 870). The plain wording of the warranty provision in this case shows that Laticrete warranted its product's performance for a period of five years. This constituted an explicit warranty of future performance (*Dormitory Auth. v Baker of N. Y., supra*). Therefore, the cause of action for the breach of this warranty accrued when "the breach is or should have been discovered" (UCC 2-725 [2]).

The parties dispute when this occurred. Laticrete argues that plaintiff admitted in an interrogatory that the injury occurred upon installation in 1988, and therefore that plaintiff must have been aware of the breach by at least 1989 when the first leaks in the roof and window were discovered. Plaintiff contends that it could not have discovered the breach before 1991, when PSL informed Laticrete (and presumably LMB, A&L and plaintiff) that the leaking was possibly due to the defective wall panels provided by Laticrete.

The record does not definitively establish when the plaintiff knew or should have known of the breach of warranty. If plaintiff's 1991 accrual date is accurate, the warranty cause of action asserted in the 1997 amended complaint is timely since it would relate back to plaintiff's 1994 complaint (CPLR 203 [f]; *Dormitory Auth. v Baker of N. Y., supra,* at 516; *see generally, Duffy v Horton Mem. Hosp.*, 66 NY2d 473, 477 [amendments which merely add a new theory of recovery arising out of a transaction or occurrence already in litigation will relate back to original pleading]). As the 1994 complaint may have been filed less than four years after the cause of action accrued, the grant of permission to amend the complaint to add a breach of warranty cause of action was proper.

However, the request for punitive damages should have been denied since there is no showing of fraudulent conduct, let alone a fraud evincing "a high degree of moral turpitude" as required (*Walker v Sheldon*, 10 NY2d 401, 405; *see also, Rocanova v Equitable Life Assur. Socy.*, 83 NY2d 603, 613).

The IAS Court properly denied Laticrete's motion seeking dismissal of the codefendants' cross claims for contribution and indemnification. Laticrete argues that because plaintiff's claim against the codefendants sounds in contract and not tort, the

economic loss doctrine precludes any contribution recovery (*see, Board of Educ. v Sargent, Webster, Crenshaw & Folley*, 71 NY2d 21, 26). It also asserts that no right of implied indemnity exists because the codefendants' liability is not vicarious. Alternatively, Laticrete argues that if plaintiff does have viable tort claims against the codefendants, they are long barred by the Statute of Limitations and cannot serve as the basis for the cross claims.

Laticrete's arguments must be rejected. While plaintiff's tort causes of action against the codefendants may ultimately be shown to lack merit or be barred by the Statute of Limitations, those causes of action are still pending against the codefendants as they have not moved to dismiss them. Thus, the necessary predicate tort liability for a contribution action remains in the case. Further, the possibility that either codefendant may be found vicariously liable for Laticrete's failure has not been removed, and we conclude that the indemnification cross claim should also not be dismissed.

Plaintiff cross-appeals from the IAS Court's dismissal of its negligent misrepresentation cause of action on Statute of Limitations grounds. It is unnecessary for us to rule on the timeliness of this claim since, as with the fraud and General Business Law claims, it fails on the merits. "In the commercial context, a duty to speak with care exists when 'the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information' (*International Prods. Co. v Erie R. R. Co.*, 244 NY 331, 338, [*cert denied* 275 US 527])." (*Kimmell v Schaefer*, 89 NY2d 257, 263.) Liability for negligent misrepresentation has been imposed only on parties with specialized knowledge, or those "who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified" (*Kimmel v Schaefer, supra*, at 263).

As a matter of law, no special relationship existed between plaintiff and Laticrete so as to impose a duty on Laticrete to speak with care. This was a large-scale extensive construction project, and plaintiff retained a highly experienced construction manager and architect to oversee the design and construction of its nursing home building. Laticrete, on the other hand, was a remote materials supplier that delivered its wall panels to PSL, the installer, but otherwise had no role in the construction project. The record bears out Laticrete's assertions that plaintiff never made any inquiries to it regarding the Laticrete EP Board. As noted, there was little, if any, contact between

plaintiff and Laticrete prior to Laticrete's delivery of the wall panels. Given Laticrete's status as a remote supplier, and the lack of evidence of any representations made directly to plaintiff concerning the composition or suitability of the EP Board, there was no reliance as a matter of law and the negligent misrepresentation claim was properly dismissed (see, McGill v General Motors Corp., 231 AD2d 449, 450). Concur—Mazzarelli, J. P., Wallach, Rubin, Andrias and Saxe, JJ.

