## In re AUTOMOTIVE REFINISHING PAINT ANTITRUST LITIGATION.

### MDL Docket No. 1426.

United States District Court,
E.D. Pennsylvania.

May 8, 2007.

**MEMORANDUM & ORDER**

R. BARCLAY SURRICK, District Judge.

Presently before the Court are Defendants Sherwin–Williams Company and PPG Industries, Inc.'s Renewed And Supplemented Motion To Dismiss The Complaint Of Atlantic Auto Collision, Inc. (Doc. No. 186, MDL No. 1426; Doc. No. 53, 01–CV–2830), Defendants E.I. du Pont de Nemours & Co., DuPont Performance Coatings, Inc., Akzo Nobel, Inc., Akzo Nobel Coatings Inc., and BASF Corporation's Motion To Dismiss Atlantic Auto Collision's Amended Complaint Or, In The Alternative, To Ask The Court To Suggest To The MDL Panel That Atlantic Auto Collision's Claims Be Remanded To The U.S. District Court For The Eastern District Of New York (Doc. No. 188, MDL No. 1426; Doc. No. 2, 06–CV–2784). For the following reasons, Defendants' Motions to Dismiss will be granted.

## I. BACKGROUND

The original action in this multidistrict litigation (MDL) was filed on behalf of all individuals and entities who purchased automotive refinishing paint in the United States directly from Defendants, their predecessors or their controlled subsidiaries from at least as early as January 1, 1993, to at least December 31, 2000. The Amended Complaint in the original MDL alleges that during that period, Defendants conspired to fix, raise, maintain or stabilize prices for automotive refinishing paint sold in the United States, thereby artificially inflating prices for automotive refinishing paint in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. The Court certified a Class of direct purchasers by stipulation of the parties on October 9, 2002. (Doc. No. 74, MDL No. 1426.) Since that time, there has been extensive discovery, and the Court has approved preliminary or final settlements between the original Plaintiff class and all Defendants. (See Doc. Nos. 84, 108, 109, 122, 123, 135, 215, MDL No. 1426.)

On March 21, 2005, Plaintiff Atlantic Auto Collision, Inc. filed a Complaint in the Eastern District of New York against Defendants E.I. du Pont de Nemours & Co., DuPont Performance Coatings, Inc. (collectively "DuPont"), Akzo Nobel, Inc., Akzo Nobel Coatings Inc. (collectively "Akzo"), BASF Corporation, PPG Industries, Inc., and Sherwin Williams Inc. on behalf of themselves and all others similarly situated. (Doc. No. 1, 06–CV–2784.)[1] The Atlantic Auto Collision Complaint was filed in federal court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), and involves claims brought on behalf of indirect purchasers of automotive refinishing paint. The Atlantic Auto Collision Complaint asserts claims under New York's antitrust statute (known as the Donnelly Act), General Business Law § 340, and New York's Consumer Protection Act, General Business Law § 349. (*Id.*) On June 16, 2006, the Judicial Panel on Multidistrict Litigation ordered the transfer of the Atlantic Auto Collision case to this District to be included in the consolidated pre-trial proceedings in MDL Docket No. 1426.[2] Defendants filed the instant Motions on August 22, 2006 and August 24, 2006, renewing and supplementing arguments that had originally been made in the Eastern District of New York. Defendants contend that both the Donnelly Act claim and the Consumer Protection Act claim must be dismissed for lack of subject matter jurisdiction and because the Complaint fails to allege facts sufficient to support the elements of the claims. Defendants supplemented their original pleading on March 2, 2007 with additional authority

from the New York Court of Appeals on the Donnelly Act. (Doc. No. 9.)

## II. LEGAL STANDARD

■■■ Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction over the case. Fed.R.Civ.P. 12(b)(1). The party asserting that jurisdiction is proper bears the burden of showing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1045 (3d Cir.1993). In reviewing the merits of a Rule 12(b)(1) motion, a district court may consider evidence that is outside the pleadings. *Graham v. United States*, Civ. A. No. 97–1590, 2002 WL 188573, *2, 2002 U.S. Dist. LEXIS 1765, at *4 (E.D.Pa. Feb.5, 2002).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for failure to state a claim. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir.1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *Swin Res. Sys., Inc. v. Lycoming County*, 883 F.2d 245, 247 (3d Cir.1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the nonmoving party. *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989) (citing *Wisniewski v. Johns–Man-*

---

1. The Complaint was originally filed as Doc. No. 1 in Docket No. 05–CV–1448 in the Eastern District of New York. Plaintiff filed an Amended Complaint (Doc. No. 3, E.D.N.Y.05–CV–1448) on May 26, 2005, correcting party names and making other non-substantive changes.

2. The settlements, which were approved by this Court, involved only the direct purchaser action and not the indirect purchaser action transferred from New York that is the subject of this Memorandum and Order.

*ville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)). The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swin Res. Sys., Inc.*, 883 F.2d at 247.

## III. LEGAL ANALYSIS

### A. Donnelly Act Claim

#### 1. *Application of N.Y. CPLR 901(b) to State Antitrust Class Actions*

Plaintiff's Complaint alleges a violation of New York General Business Law § 340 ("Donnelly Act"), contending that Defendants and co-conspirators "engaged in a contract, combination and conspiracy in unreasonable restraint of ... foreign and interstate trade and commerce" by agreeing to "fix prices and allocate markets in the sale of automotive refinishing paint." (Doc. No. 1, 06–CV–2784, Am. Compl. at 5.) Plaintiff seeks to maintain this claim as a class action, praying for "threefold the damages each [plaintiff] sustained from the conduct of the defendants." (*Id.* at 6–7.) Defendants contend that this claim must be dismissed because under New York law, a Donnelly Act claim cannot be brought as a class action. (Doc. No. 186 at 6.)

The Donnelly Act provides:

Every contract, agreement, arrangement or combination whereby ... [a] monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby [c]ompetition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained ... is hereby declared to be against public policy, illegal and void.

N.Y. Gen. Bus. Law § 340(1) (2004). The Act further provides that "any person who shall sustain damages by reason of any violation of this section, shall recover three-fold the actual damages sustained thereby." *Id.* at § 340(5). New York Civil Practice Law and Rules 901(b) states: "Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." N.Y. CPLR 901(b) (2005). Defendants contend that because of the provision regarding treble damages in § 340, CPLR 901(b) bars Donnelly Act class actions.

Defendants cite a number of cases from New York appellate courts and federal district courts that support the argument that CPLR 901(b) applies to the Donnelly Act and precludes class actions under the Act. (Doc. No. 186 at 6–7.) In response, Plaintiff argues that CPLR 901(b) does not apply to New York antitrust class actions because the Donnelly Act's provision for treble damages does not constitute a "penalty" as specified by CPLR 901(b). In its October 16, 2006 brief, Plaintiff noted that a case was then pending before the New York Court of Appeals, New York's highest court, that specifically addressed this question. Plaintiff suggested that we should defer decision on the issue until the New York Court of Appeals decided the case. (Doc. No. 3 at 4; 06–CV–2784.) As Defendants point out in their Notice of Supplemental Authority (Doc. No. 9, 06–CV–2784), the New York Court of Appeals recently decided that case. The court issued a decision in *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 831 N.Y.S.2d 760, 863 N.E.2d 1012 (N.Y.2007), on February 22, 2007 in which it held that "Donnelly Act threefold damages should be regarded as a penalty

insofar as class actions are concerned." *Id.* at 214, 831 N.Y.S.2d 760, 863 N.E.2d 1012. This decision was in keeping with the great weight of authority in the New York state courts and the federal courts. *See Paltre v. Gen. Motors Corp.*, 26 A.D.3d 481, 483, 810 N.Y.S.2d 496 (N.Y.App.Div. 2006); *Leider v. Ralfe*, 387 F.Supp.2d 283, 287–88 (S.D.N.Y.2005). As a federal court sitting in diversity, we must apply state substantive law as decided by the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Johnson v. Fankell*, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) ("Neither this Court nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State."); *Covington v. Cont'l Gen. Tire, Inc.*, 381 F.3d 216, 218 (3d Cir.2004) ("It is well established that a federal court exercising diversity jurisdiction must apply the substantive law of the appropriate state. In the absence of a definitive ruling by a state's highest court, we must predict how that court would rule if faced with the issue."). Accordingly, we conclude that CPLR 901(b) precludes class actions under the Donnelly Act.

### 2. Application of N.Y. CPLR 901(b) to Diversity Actions in Federal Court

Even though CPLR 901(b) bars Donnelly Act class actions, Plaintiff argues that as a federal court sitting in diversity, we should not apply CLPR 901(b) at all. Citing *Erie*, Plaintiff asserts that federal courts sitting in diversity must apply state substantive law and federal procedural law. Plaintiff then argues that because Federal Rule of Civil Procedure 23 addresses class actions, we should apply only Rule 23 and not CPLR 901(b).

■ When a federal rule and a state rule appear to be in conflict, the federal court must determine whether, "when fairly construed, the scope of the federal rule is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of that law." *Leider*, 387 F.Supp.2d at 289 (quoting *Burlington N.R.R. Co. v. Woods*, 480 U.S. 1, 4–5, 107 S.Ct. 967, 94 L.Ed.2d 1 (1987)); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (explaining that the proper inquiry is not whether there is a "direct collision" between the federal and state rules, but whether "the federal statute [is] sufficiently broad to cover the point in dispute"). Here, there is no real conflict between Rule 23 and CPLR 901(b). *See Leider*, 387 F.Supp.2d at 290. Rule 23 establishes the procedures for litigating a class action in federal court. *Id.* (quoting *Wade v. Danek Med., Inc.*, 182 F.3d 281, 290 (4th Cir.1999)). CPLR 901(b), on the other hand, restricts the types of cases that may be brought as a class action. Thus, "these two statutes address different issues and ... as other courts have concluded, may co-exist." *Id.* (citing *United States v. Dentsply Int'l, Inc.*, Nos. Civ. A. 99–005, 99–255, 99–854, 2001 WL 624807, at *16 (D.Del. Mar.30, 2001)) (holding that Rule 23 and § 901(b) do not conflict because "Rule 23 ... governs the manner of determining whether class certification is appropriate in federal courts [whereas] § 901(b) establishes a bar to certain claims being considered for class action treatment on a threshold level").

■ Addressing the question of whether CPLR 901(b) should be considered a procedural or substantive rule under an *Erie* analysis, *Erie* counsels that federal courts in diversity must address this question by considering the outcome of disregarding the law of a state that would be controlling had the same action been brought in state

court. *See Liberty Mut. Ins. Co. v. Trees-dale, Inc.*, 419 F.3d 216, 228 (3d Cir.2005) (describing the holding in *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), which provided an early interpretation of *Erie* that focused on an "outcome-determination" test). The Court in *Guaranty Trust* held: "[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust*, 326 U.S. at 109, 65 S.Ct. 1464. Later cases have clarified that the "outcome-determination" test should be guided by "the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Liberty Mut. Ins. Co.*, 419 F.3d at 229 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).

Applying this analysis to the instant case, it is clear that CPLR 901(b) must apply in federal court as it does in state court. Any other conclusion would contravene the mandates of *Erie* by allowing "plaintiffs to recover on a class-wide basis in federal court when they are unable to do the same in state court." *Leider*, 387 F.Supp.2d at 291 (citing *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 285 (D.Mass.2004) (reasoning that a failure "to apply CPLR 901(b) would clearly encourage forum-shopping, with plaintiffs and their attorneys migrating toward federal court to obtain the substantial advantages of class actions"); *Dornberger v. Metro. Life Ins. Co.*, 182 F.R.D. 72, 84 (S.D.N.Y. 1998) (refusing to certify plaintiffs' N.Y. Ins. Law. § 4226 claims in light of CPLR 901(b) because "[i]t would be patently unfair to allow plaintiff an attempt at recovery in federal court for a state law claim that would be barred in state court."); *Dentsply Int'l, Inc.*, 2001 WL 624807, at *16 ("In order to ensure that the outcome of the litigation at bar will be substantially the same ... the court shall apply N.Y. C.P.L.R. § 901(b), which precludes these New York State residents from maintaining a class action under the Donnelly Act.")). Many courts have similarly concluded that CPLR 901(b) is substantive and must be applied in a federal action. *See id.* (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 94–95 (S.D.N.Y.2001); *Dornberger*, 182 F.R.D. at 84; *In re Relafen Antitrust Litig.*, 221 F.R.D. at 285–86; *Dentsply Int'l, Inc.*, 2001 WL 624807, at *16; *In re Microsoft Corp. Antitrust Litig.*, 127 F.Supp.2d 702, 727 (D.Md.2001), *opinion supplemented by*, 2001 WL 137254 (D.Md. Feb.15, 2001)); *see also Bonime v. Avaya, Inc.*, No. 06–CV–1630, 2006 WL 3751219, at *2 (E.D.N.Y. Dec. 20, 2006); *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 466 F.Supp.2d 467, 472–73 (E.D.N.Y.2006). We conclude that CPLR 901(b) must be applied with equal force in federal court and that it precludes class actions under the Donnelly Act. Plaintiff sought jurisdiction in this Court pursuant to CAFA, 28 U.S.C. § 1332(d).[3] Since the Donnelly Act

---

3. CAFA provides:

The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant;

(B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or

claim cannot be maintained as a class action, we lack subject matter jurisdiction over the claim. Accordingly, we are compelled to dismiss Plaintiff's Donnelly Act Claim.

## B. Consumer Protection Act Claim

Plaintiff also brings a claim under New York's Consumer Protection Act, N.Y. Gen. Bus. Law § 349. Defendants again argue that this claim must be dismissed both because CPLR 901(b) precludes class actions for treble damages under § 349 and because Plaintiff has failed to allege facts sufficient to establish this claim.

Section 349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a). Defendants contend that just as CPLR 901(b) precludes class actions under the Donnelly Act, it also bars class actions for treble damages under the Consumer Protection Act.[4] Plaintiff agrees that New York courts have consistently recognized CPLR 901(b)'s ban on treble damages under § 349. However, in response, Plaintiff asserts that the Complaint should be read to demand only actual damages for this claim. (Doc. No. 3 at 24 n. 11.) Thus, CPLR 901(b) is no longer applicable and this claim may be maintained as a class action. *See Ridge Meadows Homeowners' Assoc'n, Inc. v. Tara Dev. Co., Inc.,* 242 A.D.2d 947, 947, 665 N.Y.S.2d 361 (N.Y.App.Div.1997); *Super Glue Corp. v. Avis Rent A Car System, Inc.,* 132 A.D.2d

604, 606, 517 N.Y.S.2d 764 (N.Y.App.Div. 1987).

■■■ Defendants also contend that Plaintiff has failed to allege sufficient facts to support a claim under § 349. The Consumer Protection Act "provides a private right of action for consumer fraud." *Bildstein v. MasterCard Int'l, Inc.,* No. 03–CV–9826, 2005 WL 1324972, at *2 (S.D.N.Y. June 6, 2005). The Act requires that a plaintiff prove the following: "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.; see also In re Rezulin Prods. Liab. Litig.,* 392 F.Supp.2d 597, 612 (S.D.N.Y.2005). The Complaint in this case alleges that Defendants violated § 349 in that they "engaged in a contract, combination, and conspiracy in unreasonable restraint of ... foreign and interstate trade and commerce [and] agreed to fix prices and allocate markets in the sale of automotive refinishing paint." (Doc. No. 1, Am. Compl. at 5.) Plaintiff further alleges that the effects of the conspiracy included: "(1) The prices paid by purchasers for automotive refinishing paint have been maintained at artificially high and noncompetitive levels; (2) Purchasers of automotive refinishing paint have been deprived of the benefits of free and open competition; and (3) Competition between and among defendants and co-conspirators in the sale of automotive refinishing paint has been unreasonably restrained." (*Id.* at 5–6.)[5] Defendants ar-

---

(C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

28 U.S.C.A. § 1332(d)(2).

**4.** Section 349 also includes a provision allowing for treble damages: "The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actu-

al damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." N.Y. Gen. Bus. Law § 349(h). The Act does not include a specific authorization for class actions.

**5.** The Complaint asserts that members of the class have incurred damages in that they "paid more for automotive refinishing paint

gue that these allegations are insufficient in that they do not allege conduct that is consumer-oriented nor do they allege any deceptive act.

### 1. *Consumer–Oriented Conduct*

As stated above, to assert a claim under § 349, Plaintiff must "charge conduct of the defendant that is consumer-oriented." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.* 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995); *see also In re Rezulin,* 392 F.Supp.2d at 613. "Generally, claims under the statute are available to an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 55, 698 N.Y.S.2d 615, 720 N.E.2d 892 (N.Y.1999).

New York courts interpreting this Act have consistently held that when the conduct at issue is between two companies and does not involve the ultimate consumer, it cannot be the basis of a claim under § 349. In *St. Patrick's Home for the Aged and Infirm v. Laticrete International, Inc.,* 264 A.D.2d 652, 696 N.Y.S.2d 117 (N.Y.App.Div.1999), the court considered a claim for damages resulting from defective construction of the exterior wall of a nursing home. *Id.* at 652, 696 N.Y.S.2d 117. The claim under the Consumer Protection Act was based on an allegation that the manufacturer of the wall made material misrepresentations about its suitability for the project to the construction company and architect who installed it. *Id.* at 653, 696 N.Y.S.2d 117. While the plaintiff nursing home was the ultimate consumer and suffered damages as a result of the faulty wall, the court concluded that the nursing home could not sue under § 349 because the sale of the wall did not constitute consumer-oriented conduct. The court held:

> The transaction ... was a sizable one between two companies in the building construction and supply industry. It did not involve any direct solicitation [of] the plaintiff, the ultimate consumer. In short, this was not the type of 'modest' transaction that the statute was intended to reach but rather a private dispute between plaintiff and a supplier over a defective product.

*Id.* at 655, 696 N.Y.S.2d 117. Thus, when the alleged deceptive act occurs in a transaction between two companies, even when the result of the deception impacts on a consumer, it is not actionable under § 349.

Similarly, in *Sperry v. Crompton Corp.,* No. 17872/02 (N.Y.Sup.Ct. Nov. 20, 2003), *aff'd* 26 A.D.3d 488, 810 N.Y.S.2d 498 (N.Y.App.Div.2006), the plaintiff was an individual purchaser of automobile tires who brought suit against companies that sold rubber-processing materials to tire manufacturers, alleging that they engaged in an illegal cartel agreement designed to fix the price of rubber-processing products. *Id.* at 1–2. The plaintiff in *Sperry* contended that as a result of the alleged conspiracy, consumers were forced to pay "supracompetitive prices for tires containing or utilizing rubber processed with defendants' chemicals." *Id.* at 2. The court concluded that the conduct complained of "concerned private business transactions between corporations, and not between consumers." *Id.* at 4. Because the conduct at issue was an alleged illegal agreement between rubber-processing material companies to fix prices, and because the defendants had no contact with the plaintiff or the purported class of tire-purchasing con-

than they otherwise would have paid in the absence of defendants' unlawful contract, combination, and conspiracy." (Doc. No. 1, Am. Compl. at 6.)

sumers, the court concluded that the allegations could not be construed as "consumer oriented" as is required under § 349. *Id.* Like *St. Patrick's Home,* the court found activity between two businesses to be outside of the scope of the Consumer Protection Act.

The federal courts that have considered this issue under § 349 have reached similar conclusions. In *In re Rezulin,* the court determined that a claim by the plaintiff, a pharmacy benefit manager, against a pharmaceutical company for allegedly misrepresenting the efficacy of a diabetes drug could not be pursued under § 349. *In re Rezulin,* 392 F.Supp.2d at 614. The court concluded that while diabetes patients might, as consumers, ultimately be affected by the alleged fraud, the injury at issue in the case was that caused by the defendant's alleged deception of plaintiff, a sophisticated business that administers prescription drug programs for group health insurance plans, and was not consumer-oriented.[6] *Id.* The court in *Black Radio Network, Inc. v. Nynex Corp.,* 44 F.Supp.2d 565 (S.D.N.Y.1999), reached a similar conclusion in a case involving a dispute between companies that produce recorded messages on topics such as sports, financial news, and horoscopes, and telephone companies that delivered plaintiffs' recorded messages to thousands of simultaneous callers. *Id.* at 569. The court dismissed the § 349 claim because of the lack of consumer-oriented conduct, stating:

[T]his case involves businesses engaged in arm's length transactions for services that are not available to the general public. Nor, of course, does the fact that consumers were the ultimate end-users convert the transaction into a consumer transaction. Further, plaintiffs' amended complaints are devoid of any reference to harm to the public at large. Instead, plaintiffs focus exclusively on their own alleged injury.

*Id.* at 583. *See also Gucci America, Inc. v. Duty Free Apparel, Ltd.,* 277 F.Supp.2d 269, 273 (S.D.N.Y.2003) ("Claims that arise out of a trademark infringement action, and disputes between competitors where the core of the claim is harm to another business as opposed to consumers, both constitute situations which courts have found to reflect a public harm that is too insubstantial to satisfy the pleading requirements of § 349.").

The case before us presents a situation that is remarkably similar to these cases. Plaintiff is a body shop that purchases automotive refinishing paint from distributors. The Complaint alleges that Defendants made agreements between themselves to sell paint to these distributors at artificially high and noncompetitive levels. Such conduct is clearly not consumer-oriented. The alleged illegal agreement between the paint manufacturers, which was directed at prices charged to distributors and then passed along to body shops like Plaintiff, was a transaction between corporations and not consumers. This is not the type of conduct intended to come within the scope of § 349.[7]

---

**6.** In reaching this conclusion, the court noted that New York law defines "consumers" as "those who purchase goods and services for personal, family or household use." *In re Rezulin,* 392 F.Supp.2d at 614 (quoting *Med. Soc'y of State of N.Y. v. Oxford Health Plans, Inc.,* 15 A.D.3d 206, 790 N.Y.S.2d 79 (N.Y.App.Div.2005)).

**7.** Plaintiff relies on *Verizon Directories Corp. v. Yellow Book USA, Inc.,* 338 F.Supp.2d 422, 428 (E.D.N.Y.2004) for the proposition that small business owners may be considered "consumers" and hence benefit from § 349's protection. While Plaintiff is correct that the *Verizon* Court so held, the situation in which the court reached this conclusion is easily distinguished from the instant case. In *Veri-*

## 2. *Deceptive Conduct*

In addition to asserting a lack of consumer-oriented conduct, Defendants also argue that the Complaint fails to sufficiently allege deceptive or misleading conduct as is required under § 349. The Complaint alleges a conspiracy among Defendants to fix the price of automotive refinishing paint. Defendants maintain that the Act does not apply to allegations of anticompetitive conduct without some further allegation of deceptive conduct. Plaintiff, on the other hand, contends that price fixing is itself a "deceptive practice within the meaning of § 349." (Doc. No. 3 at 24, 06–CV–2784.)

Section 349 requires "a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by reason thereof." *Goshen v. Mutual Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (N.Y.2002) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y.1995)). In addition, under § 349, "the allegedly deceptive acts, representations or omissions must be misleading to a reasonable consumer." *Id.* (quoting *Oswego*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741). Plaintiff is correct that § 349 is interpreted by reference to the definition of unlawful conduct under § 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, on which § 349 was modeled. *See Oswego*, 85 N.Y.2d at 26, 623 N.Y.S.2d 529, 647 N.E.2d 741; *see also New York v. Feldman*, 210 F.Supp.2d 294, 302 (S.D.N.Y.2002) ("In large measure, New York courts have interpreted [S]ection [349] by looking to the definition of deceptive acts and practices under [S]ection 5 of the Federal Trade Commission Act."). However, New York did not adopt the FTCA in its entirety, "which, in addition to 'deceptive acts and practices,' prohibits '[u]nfair methods of competition ... and unfair ... acts or practices in or affecting commerce.'" *Leider*, 387 F.Supp.2d at 295 (quoting 15 U.S.C. § 45(a)(1)). This omission is significant. A number of courts and commentators have observed that the absence of the reference to unfair competition or unfair practices in § 349 "indicates that anticompetitive conduct that is not premised on consumer deception is not within the ambit of the statute."[8] *Id.* (citing *In re New Motor Vehicles Can. Exp. Antitrust Litig.*, 350 F.Supp.2d 160, 196–97 (D.Me.2004) ("An antitrust violation may violate section 349, but only if it is deceptive."); Peter J. Wied, Note, *Patently Unfair: State Unfair Competition Laws and Patent Enforcement*, 12 Harv. J.L. & Tech. 469, 498–99 (Winter 1999) ("[T]he omission of unfair acts from sec-

---

*zon Directories*, the plaintiff claimed that Yellow Book violated § 349 by communicating a false claim to consumers and advertisers about the frequency of use of Yellow Book's directory. *Id.* at 424. In concluding that the conduct at issue was consumer-oriented, the court was persuaded by the fact that the claim involved deceptive conduct directed at consumers who purchase advertising in yellow page directories. *Id.* at 428. This is significantly different from the conduct at issue in this case, which involved an illegal agreement between businesses and was not in any way targeted at consumers.

8. The court in *Leider* also observed that it was bound by the statutory language in § 349 and cited N.Y. Stat. § 363, which provides that "[g]enerally, omissions in a statute cannot be supplied by construction." *Leider*, 387 F.Supp.2d at 297. The comments to N.Y. Stat. § 363 elaborate further that "[i]t is a general rule of construction that omissions in a statute cannot be supplied by construction; omissions are to be remedied by the Legislature, and not by the courts." N.Y. Stat. § 363.

tion 349 ... implies that such acts were not intended to be covered by the statute unless they were also deceptive."); Joseph Thomas Moldovan, Note, *New York Creates a Private Right of Action to Combat Consumer Fraud: Caveat Venditor*, 48 Brook. L.Rev. 509, 562–63 (1982) (surmising that the exclusion of "unfair acts or practices" was "intended to insure that the New York Act would not have application to antitrust laws")).

Plaintiff's conclusion that § 349 covers price fixing and other antitrust violations because § 5 of the FTCA forbids these acts is incorrect. In fact, both New York state courts and federal courts have opined that mere anticompetitive conduct alone does not constitute deceptive conduct under § 349 and that to come within the scope of the statute, the Complaint must allege some additional deception or misrepresentation. *See Leider*, 387 F.Supp.2d at 295–96 (finding anticompetitive conduct alone to be insufficient for § 349 claim where antitrust allegations lacked degree of subterfuge necessary for the claim); *In re New Motor Vehicles*, 350 F.Supp.2d at 196–97 ("An antitrust violation may violate section 349, but only if it is deceptive."); *Sperry v. Crompton Corp.*, No. 17872/02, slip op. at 4–5 (N.Y.Sup.Ct. Nov. 20, 2003) (concluding that where plaintiff alleged only anticompetitive conduct and price fixing, there were "no allegations of fact from which it [could] be inferred that these defendants ... engaged in a deceptive scheme which would likely mislead a rea-

sonable ... consumer acting reasonably under the circumstances").

Plaintiff's reliance on *Cox v. Microsoft Corp.*, 8 A.D.3d 39, 778 N.Y.S.2d 147 (N.Y.App.Div.2004), is misplaced. In *Cox*, the court found that plaintiffs had sufficiently stated a § 349 claim when they alleged that Microsoft had engaged in "*deceptive* monopolistic business practices" and "secret agreements ... to inhibit competition" and had created "an 'applications barrier' in its Windows software that, unbeknownst to consumers, rejected competitors' Intel-compatible PC operating systems." *Id.* at 40, 778 N.Y.S.2d 147 (emphasis supplied). Clearly, the *Cox* Court found allegations of more than mere anticompetitive conduct since it described that conduct as "deceptive" and secretive and also referred to patently deceptive conduct that was targeted directly at consumers in the form of a barrier to competitors' products in the company's Windows software. *Id.* As a result, the claim in *Cox* is not at all analogous to the claim before us in which Plaintiff alleges price fixing agreements and nothing more.[9] We are persuaded that § 349's prohibition on "deceptive acts or practices" requires more than allegations of anticompetitive conduct and that, as a result, Plaintiff has not sufficiently alleged a claim under the Act.

Accordingly, because the Complaint fails to allege facts sufficient to establish a claim under § 349, failing to allege consumer-oriented conduct and deceptive con-

---

9. Plaintiff's reference to *New York v. Feldman*, 210 F.Supp.2d 294 (S.D.N.Y.2002), is also unpersuasive. In *Leider*, the Southern District of New York recently referred to *Feldman* as a case, like *Cox*, that found anticompetitive conduct to come within § 349 only when it was also deceptive. The behavior at issue in *Feldman* involved "secret bidding sessions" prior to public auctions at which the defendants agreed to "skew prices and de-

prive the public of a competitive marketplace." *Leider*, 387 F.Supp.2d at 296 (citing *Feldman*, 210 F.Supp.2d at 297, 298). While *Feldman* does not fully explain how the defendants' alleged conduct was deceptive, we are persuaded by *Leider, In re New Motor Vehicles Canadian Export Antitrust Litig., Sperry*, and *Cox* that § 349 requires more than mere allegations of anticompetitive behavior and price fixing.

duct, we are compelled to dismiss the claim under § 349 as well. Since Plaintiff's claims under New York General Business Law §§ 340 and 349 will be dismissed and no further claims remain, Plaintiff's Complaint will be dismissed in its entirety.

An appropriate Order follows.

### ORDER

AND NOW, this *8th* day of May, 2007, upon consideration of Defendants Sherwin–Williams Company and PPG Industries, Inc.'s Renewed And Supplemented Motion To Dismiss The Complaint Of Atlantic Auto Collision, Inc. (Doc. No. 186, MDL No. 1426; Doc. No. 53, 01–CV–2830), Defendants E.I. du Pont de Nemours & Co., DuPont Performance Coatings, Inc., Akzo Nobel, Inc., Akzo Nobel Coatings Inc., and BASF Corporation's Motion To Dismiss Atlantic Auto Collision's Amended Complaint Or, In The Alternative, To Ask The Court To Suggest To The MDL Panel That Atlantic Auto Collision's Claims Be Remanded To The U.S. District Court For The Eastern District Of New York (Doc. No. 188, MDL No. 1426; Doc. No. 2, 06–CV–2784), and all papers submitted in support thereof and in opposition thereto, it is ORDERED that the Motions to Dismiss are GRANTED. Plaintiff's Complaint is DISMISSED.

IT IS SO ORDERED.