OPINION OF THE COURT
Debra Silber, J.
Plaintiff law firm moves for summary judgment, claiming they received an unsolicited “junk fax” from defendants, *450 thereby entitling plaintiff to statutory damages of $500 and treble damages of $1,500, pursuant to the provisions of the Federal Telephone Consumer Protection Act of 1991[1] (hereinafter TCPA). After oral argument, both sides represented by counsel, the motion is denied, and the complaint is dismissed for failure to state a cause of action for which relief may be granted.
The statute in question grants a private right of action to victims of violations of the law,[2] which covers both unsolicited telemarketing calls and facsimile transmissions, justiciable solely in state courts,[3] provided the alleged violator is covered by the statutory definition.[4]
New York courts apparently have, up to this point, only touched on peripheral issues, and not the substance of the law. For example, the Schulman case (cited in n 2) dealt with jurisdiction. A recent case held, in a declaratory judgment action, that the alleged violator’s insurer was required to defend and indemnify it in a class action suit, finding it was a suit alleging a tort covered by the policy.[5]
The court finds that the defendant’s second affirmative defense, that the statute is unconstitutional, is a meritorious defense as applied to the portion of the statute concerning facsimile transmissions (hereinafter faxes), as violative of the Constitution of the United States and the Constitution of the State of New York. Additionally, it is more restrictive than *451 New York State’s law on the matter — General Business Law § 396-aa, which provides sufficient protection. The court, therefore, adopts the analysis of the United States District Court for the Eastern District of Missouri, in Missouri ex rel. Nixon v American Blast Fax, Inc. (196 F Supp 2d 920 [2002]), which found the law as applied to faxes unconstitutional,[6] and therefore denies the motion and dismisses the complaint. With regard to defendants’ claim that the fax is not an ad for property, goods or services, and thus not covered by the TCPA, the court disagrees, as a share of stock is intangible personal property, but in light of the decision to dismiss on other grounds, this issue need not be reached.
Statement of Facts
Plaintiff received a fax transmitted by defendant Fax.com, apparently pursuant to a contract with defendant Enine, Inc., which hired Fax.com to send faxes to a database either provided by Fax.com or provided by Enine, Inc. Plaintiff is a law firm, and claims that it is protected by the TCPA, and the fact that this one-page fax popped out of its fax machine entitles the firm to $500 in statutory damages under the act, and $1,500 in treble damages for defendants’ wilful or knowing violation of the act. Plaintiff claims that the transmission of the fax was unsolicited, and is an advertisement covered by the act. The offending fax in question, annexed as exhibit C to the moving papers, is a photocopy of very poor quality. It is titled “Enine Market Watch” and proceeds to provide information about a stock. Because of the poor quality, it cannot be determined whether the solicitation is for a subscription to the “Enine Market Watch,” to receive future information about stocks, or whether it is selling the stock described. The Web site for Enine, Inc. is indicated with the words “for information * * * visit us at www.enine.com,” and right next to that it states “call [telephone number] to be removed from the fax list.”
Conclusions of Law
The Telephone Consumer Protection Act of 1991 was enacted to, among other things, prohibit telemarketers from using automated telephone dialing machines on residential telephone *452 lines or using any telephone facsimile machine to send an unsolicited advertisement to another facsimile machine.[7] The Federal Communications Commission (FCC) rules became effective on December 20, 1992 and in pertinent part addressed “any telephone solicitation to a residential telephone subscriber.” (47 CFR 64.1200 [e].) They require telemarketers, including brokerage firms, to develop written policies for a do-not-call list, to maintain and update such a list and to train their employees in its use. There is no such requirement of a no-call list for facsimile machines.
In the Missouri case, the Attorney General of the State of Missouri sued the defendants, presumably for an injunction, identifying more than 200 faxes which they claimed were unsolicited and were sent to their offices. The court notified the United States of the suit, and of the defendants’ allegations that the statute was unconstitutional. The government made a motion to intervene, which was granted. A hearing was held at the United States District Court in Missouri. Present were representatives from the State of Missouri’s Attorney General’s Office, the United States (presumably from the FCC, but it is not stated), and from Fax.com, the defendant, which is also the company that is the defendant in this action. It seems American Blast Fax went out of business before the suit and was in default. Many witnesses testified at the hearing. The court heard testimony about the cost of receiving faxes, the burden on small businesses of receiving junk faxes, the burden on e-mail servers that provide faxes by e-mail when subjected to mass faxing, the nature of the complaints about faxes received by the Attorneys General of several states,[8] and testimony from witnesses to the effect that receipt of a fax solicitation is a de minimis intrusion compared to a telemarketing call.
The Missouri court then reviewed the defendants’ contention that the provision prohibiting unsolicited faxes violates their freedom of speech as protected by the First Amendment. The court then discussed the state of the law concerning commercial speech:
“The government has no power to restrict expression because of its message, its ideas, its subject matter, or its content, and with respect to noncommercial speech, the Supreme Court has sustained *453 content-based restrictions only in the most extraordinary circumstances. Bolger v. Youngs Drug Prod. Corp., 463 U.S. 60, 65, 103 S.Ct. 2875, 2879, 77 L.Ed.2d 469 (1983). However, content-based restrictions on commercial speech may be permissible. Id. The speech at issue in this cause of action is commercial, and therefore, the Court must apply the standard which is applicable to commercial speech.”[9]
The Missouri court went on to state “advertisements by definition qualify as commercial speech,”[10] and proceeded to set forth the test to be applied to the facts, to see if the statute could pass constitutional muster:
“[T]he Central Hudson test [is] the proper standard to be used in this cause of action to analyze the restrictions on commercial speech. 447 U.S. at 566, 100 S.Ct. at 2351. This test has been referred to as an ‘intermediate’ level of scrutiny. See Florida Bar v. Went For It, Inc., 515 U.S. 618, 623, 115 S.Ct. 2371, 2375-76, 132 L.Ed.2d 541 (1995). The Central Hudson test is as follows: At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. The Government bears the burden of identifying a substantial interest and justifying the challenged restriction. * * *
“It is undisputed that the expression at issue in this cause of action is afforded a level of protection under the First Amendment. Defendants’ fax advertisements concern lawful activity and are not misleading, [noting that] [t]he statute makes no distinction between those faxes which are misleading, and those which are not” (citations omitted). [11]
*454 Thus, fax advertisements are protected commercial speech, under the First Amendment, as long as they concern lawful activity and are not misleading.[12] There is no claim to the contrary herein. A very recent federal case in New York used this analysis in concluding that the 1939 New York City law[13] prohibiting the solicitation of passersby for commercial purpose is unconstitutional. (HX Mag. v City of New York, 2002 WL 31059318, 2002 US Dist LEXIS 17083 [SD NY].)
The Missouri court reviewed the legislative history with regard to the government’s interests, and found that the two interests advanced were to prevent tying up fax lines and to prevent shifting advertising costs from the advertiser to the recipient, i.e., by forcing the recipient to pay for the fax paper and toner instead of the sender paying for printing and postage. The Missouri court then concluded that it no longer takes as much time to transmit a one-page fax as it did when the legislation was discussed, and that it costs only one half of a cent for a sheet of paper, as regular paper is now used in fax machines, while in 1990 special heat-sensitive paper was used. The Missouri court concluded, and this court agrees, that banning junk faxes which constitute advertising of property, goods or services, but permitting junk faxes with other advertising, or containing jokes, surveys, or political content, is not clearly advancing the government’s alleged interests. Indeed, for individual consumers, all unsolicited faxes should be prohibited if the consumer lists her fax number as one not to send faxes to, but there is no “no-call list” for fax numbers.[14]
Indeed, the advertiser who hires a company like Fax.com to send out ads by fax may be smaller than the business recipient complaining about the fax. Further, it is not possible or practical to know if a fax sent to a business is actually unsolicited,[15] when the recipient is a large workplace, and one of the employees might have consented to, or invited, the fax transmission. The TCPA is, therefore, not directly advancing the governmental interest asserted, and additionally, is more extensive than necessary to serve that interest. The “victim” of a violation of *455 the TCPA, as defined by the statute, is a “telephone facsimile machine.” (47 USC § 227 [b] [1] [C].) It thus applies to recipients that are businesses as well as individuals, but it does not apply to all faxes, instead covering only those that advertise property, goods or services.
In looking for alternatives, or “less restrictive means,” the Missouri court notes that the establishment of a “no-fax” database, similar to the one in existence for telephone solicitations, would be less intrusive on First Amendment rights.[16]
New York has its own law concerning unsolicited faxes, General Business Law § 396-aa, which is less restrictive than the TCPA, and sufficient for New Yorkers, according to the New York State Legislature.[17] It provides:
“Unsolicited telefacsimile advertising
“1. It shall be unlawful for a person, corporation, partnership or association to initiate the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages. For purposes of this section, Telefacsimile’ shall mean every process in which electronic signals are transmitted by telephone lines for conversion into written text. This section shall not apply to telefacsimile messages sent to a recipient with whom the initiator has had a prior contractual or business relationship nor shall it apply to transmissions not exceeding five pages received between the hours of 9:00 P.M. and 6:00 A.M. local time. Notwithstanding the above, it shall be unlawful to initiate any telefacsimile message to a recipient who has previously sent a written or telefacsimile message to the initiator clearly indicating that the recipient does not want to receive telefacsimile messages from the initiator.
“2. Any person who has received a telefacsimile transmission in violation of this section may bring an action in his own name to recover his actual damages or one hundred dollars, whichever is greater.”
Under this statute, if an unsolicited fax “promoting goods or services for purchase” is sent after 9:00 p.m. and before 6:00 a.m., it is not actionable unless it is more than five pages long. *456 Surveys, jokes, political content and the like are not barred at any time. It seems to this court that this less restrictive statute is sufficient. A business that does not want unsolicited advertising faxes to turn up in the morning can turn the fax machine off at the end of the work day. It is noted that plaintiff has not included this statute as a cause of action in its complaint.

. 47 USC §227.

. 47 USC § 227; Schulman v Chase Manhattan Bank, 268 AD2d 174 (2d Dept 2000).

. Foxhall Realty Law Offs., Inc. v Telecommunications Premium Servs., Ltd., 975 F Supp 329 (ED NY 1997), affd 156 F3d 432 (2d Cir 1998).

. The TCPA makes it unlawful for any person “to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine.” (47 USC § 227 [b] [1] [C].) The term “unsolicited advertisement” is defined as “any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person’s prior express invitation or permission.” (§ 227 [a] [4].) The TCPA was enacted in late 1991 and is part of the Communications Act of 1934. (47 USC § 151 et seq.) The provision prohibiting unsolicited faxes was enacted as part of a larger amendment which included restrictions on telephone solicitations and automatic dialing systems.

. (Merchants & Business Men’s Mut. Ins. Co. v A.P.O. Health Co., NYLJ, Aug. 29, 2002, at 22, col 1 [Sup Ct, Nassau County].) The suit to be defended, for violations with regard to the facsimile transmission portion of the statute, was brought in Indiana, not New York.

. The legislative history is at Senate Report No. 102-178, HR Report No. 102-317, 102d Cong, 1st Sess, at 1, reprinted in 1991 US Code Cong & Admin News, at 1968 (see James E. Meadows, The Telephone Consumer Protection Act of 1991: Consumer Salvation Or Unconstitutional Restraint?, 9 Computer Law 13 [Mar. 1992]; see also Cohen and Fier, Automated Telemarketing: Are the Restrictions Sufficient?, NYLJ, July 11, 1995, at 1, col 1).

. See 47 USC § 227 (b).

. It was, the court found, the content that bothered people, not the fact they had to pay for the piece of paper and toner, or that their fax line was tied up.

. Missouri ex rel. Nixon v American Blast Fax, Inc., 196 F Supp 2d 920, 927 (2002).

. Id. n 16.

. Id. at 927-928 n 17.

. Unfortunately, there does seem to be some litigation pending with regard to the Enine Market Watch, brought by the Securities and Exchange Commission, but that has not been raised by either party to this motion, and is not relevant to the issue of the statute herein.

. Administrative Code of the City of New York § 10-115.

. The New York State Do Not Call Registry for Telemarketing’s Web site is www.nynocall.com, and the telephone number is 1-86-NOCALLNY.

. Unsolicited is defined as “without that person’s prior express invitation or permission.” (47 USC § 227 [a] [4].)

. Missouri, supra at 932.

. This statute was enacted prior to the TCPA by Laws of 1989 (ch 597, §1, eff Jan. 17, 1990).