AHARON WEBER *v.* U.S. STERLING
SECURITIES, INC., ET AL.
(SC 17623)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued October 1, 2006—officially released June 19, 2007

*Earle Giovanniello*, with whom, on the brief, was *Todd Bank*, for the appellant (plaintiff).

*Allen A. Currier*, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. In this appeal, we are asked to decide whether liability attaches under the federal Telephone Consumer Protection Act (act), 47 U.S.C. § 227, to individual members of a limited liability company who sent unsolicited facsimile (fax) advertisements within New York state. The plaintiff, Aharon Weber, appeals from the summary judgment rendered by the trial court in favor of the defendants Michelle Master Orr and Shawn Orr. The plaintiff contends that the trial

court improperly concluded that the Orrs' membership in a Delaware limited liability company precludes their personal liability. Additionally, the plaintiff claims that the trial court improperly rendered summary judgment based on its conclusion that New York Civil Law and Rules § 901 (b) bars the plaintiff's class action claim and that New York General Business Law § 396-aa bars the plaintiff's individual action. We reverse in part and affirm in part the judgment of the trial court.

The following facts and procedural history guide our resolution of this appeal. The plaintiff initially filed a complaint in the Superior Court in the judicial district of Fairfield against U.S. Sterling Securities, Inc. (U.S. Sterling), a resident of Brooklyn, New York, doing business as U.S. Sterling Capital Corporation, and Michelle Master Orr and Shawn Orr, both doing business for Retail Relief, LLC (Retail Relief), alleging that they had sent a one page unsolicited fax advertisement to the plaintiff in violation of the act. The action subsequently was transferred to the Complex Litigation Docket in Stamford. The plaintiff alleged in his complaint that Shawn Orr and U.S. Sterling sent a one page fax from Hauppauge, New York, to the plaintiff's residence in Brooklyn. The fax advertised the services of Retail Relief, a consulting firm that offers to help retail businesses negotiate gross margin agreements with vendors, that is, advises businesses on the correct price at which to sell their products in order to make a certain profit. Michelle Master Orr is identified in the advertisement as the firm's managing director; she and her husband, Shawn Orr, both reside in New Canaan, Connecticut.[1]

---

[1] The trial court dismissed the plaintiff's action as to U.S. Sterling and U.S. Sterling Capital Corporation for lack of personal jurisdiction because neither conducted business or owned real property in Connecticut. The plaintiff has not appealed from the judgment of dismissal as to these parties. For purposes of convenience, we refer to Michelle Master Orr and Shawn Orr as the defendants.

The plaintiff brought the present action both in his individual capacity and as a class action on behalf of all persons and entities who had received similar unsolicited fax advertisements.[2] In his complaint, the plaintiff alleged that the defendants sent the same unsolicited fax to 5000 class members. Pursuant to 47 U.S.C. § 227 (b) (3) (A), the plaintiff sought injunctive relief and alleged that according to 47 U.S.C. § 227 (b) (3) (B) and (C), violation of the act entitled him and the other class members to statutory damages in the amount of $500 for each unsolicited fax received and treble damages for wilful or knowing violations of the act.

Thereafter, the defendants moved for summary judgment, alleging that: (1) they could not be found personally liable because they were acting on behalf of a Delaware limited liability company; (2) New York law applies to the facts of the case and New York Civil Practice Law and Rules § 901 (b) operates to bar the plaintiff from maintaining a class action lawsuit under the act; and (3) even if § 901 (b) does not preclude the present action, New York General Business Law § 396-aa bars the plaintiff's claim as it is pleaded in the complaint. The trial court granted the defendants' motion, finding that no genuine issue of material fact existed as to any of the plaintiff's allegations and that the defen-

---

[2] Although the trial court never certified the present case as a class action, we will treat it as such for the purposes of addressing the plaintiff's claim that New York Civil Law and Rules § 901 (b) bars the plaintiff's class action. See *Wal-Mart Stores, Inc.* v. *VISA, USA, Inc.*, 396 F.3d 96, 104 n.8 (2d Cir. 2005) (assuming putative class was certified despite lack of motion for certification for purposes of discussing effect of settlement); *Terry Mehlenbacher* v. *Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 n.7 (2d Cir. 2000) ("[b]ecause this suit was brought as a class action, we treat it as such [in order to determine if this court has jurisdiction] even though the [D]istrict [C]ourt has not yet granted the plaintiffs' motion for class certification").

dants are entitled to summary judgment as a matter of law.[3] This appeal followed.[4]

A brief description of the act provides context for the plaintiff's allegations. First enacted in 1991 in response to consumer complaints regarding the growing number of unsolicited telemarketing calls and fax advertisements, the act was intended to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of [fax] machines and automatic dialers." S. Rep. No. 102-178, 102d Cong., 1st Sess. (1991), reprinted in 1992 U.S.C.C.A.N. 1968; see Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394. The act makes it unlawful "for any person within the United States . . . to use any telephone [fax] machine, computer, or other device to send an unsolicited advertisement to a telephone [fax] machine . . . ." 47 U.S.C. § 227 (b) (1) (C) (2000). An "unsolicited advertisement" is one that is "transmitted to any person without that person's prior express invitation or permission." 47 U.S.C. § 227 (a) (4) (2000). The act creates a private right of action pursuant to 47 U.S.C. § 227 (b) (3) (2000): "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State . . . (A) an action based on a violation of this subsection . . . to enjoin such violation, (B) an action to recover for actual monetary loss from such

---

[3] The trial court did not file a memorandum of decision and instead briefly noted that it granted the defendants' motion for summary judgment "[f]or the reasons set forth in paragraphs one through twenty-three of [the defendants'] motion." As a result, we construe the trial court's ruling as agreeing implicitly with the defendants' claims as those claims were set forth in the defendants' motion for summary judgment.

[4] The plaintiff appealed to the Appellate Court from the judgment of the trial court, and we subsequently transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions. . . ." Claims under the act sound in tort regardless of whether they are construed as property or invasion of privacy tort claims. See *J2 Global Communications* v. *Vision Lab Telecommunications*, United States District Court, Docket No. CV056348, *6 (C.D. Cal. May 9, 2006) (determining that ban against unsolicited faxes in act addresses both property and privacy torts); *US Fax Law Center, Inc.* v. *IHIRE, Inc.*, 362 F. Sup. 2d 1248, 1252 (D. Colo. 2005) (determining that claims under act sound in tort). If a court finds that a defendant has "willfully or knowingly" violated the act, the court may award treble damages in the amount of $1500 per fax. 47 U.S.C. § 227 (b) (3) (C).

Before addressing the merits of the plaintiff's appeal, we set forth the applicable standard of review of a trial court's ruling on a motion for summary judgment. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Leisure Resort Technology, Inc.* v. *Trading Cove Associates*, 277 Conn. 21, 30–31, 889 A.2d 785 (2006).

I

The plaintiff first claims that the trial court improperly concluded that the defendants cannot be held personally liable for sending unsolicited faxes on behalf of Retail Relief, a Delaware limited liability company. Specifically, the plaintiff claims that the trial court improperly concluded that § 18-303 (a) of title 6 of the Delaware Code Annotated exempts members of a limited liability company from personal tort liability. We agree.

As a preliminary matter, we review some general principles governing limited liability companies. "[Limited liability companies] are hybrid entities that combine desirable characteristics of corporations, limited partnerships, and general partnerships. [They] are entitled to partnership status for federal income tax purposes under certain circumstances, which permits [limited liability company] members to avoid double taxation, i.e., taxation of the entity as well as taxation of the members' incomes. . . . Moreover . . . members, unlike partners in general partnerships, may have limited liability, such that  . . .  members who are involved in managing the [limited liability company] may avoid becoming personally liable for its debts and obligations." (Citation omitted.) *Great Lakes Chemical Corp.* v. *Monsanto Co.*, 96 F. Sup. 2d 376, 383 (D. Del. 2000). The limited liability company thus shields owners and managers from personal liability for the debts and liabilities incurred by the limited liability company. "All the [limited liability company] statutes explicitly provide that neither the members nor managers of [a limited liability company] are liable for debts, obligations, or other liabilities of the [limited liability company]. Indeed, the ability to combine limited liability with partnership features is one of the most important advantages of the [limited liability company]." 2 L. Ribstein & R. Keatinge, Limited Liability Companies (2005) § 12:1,

p. 12-1. Much like the liability protection offered to shareholders in a corporation, members of a limited liability company have been traditionally exempt from liability based on their membership in a limited liability company while they remain personally liable for their individual conduct. Generally, "[l]imited liability means only that a member or manager is not liable for debts and liabilities of the business solely by virtue of being such a member or manager. It does not protect the members or managers from direct individual liability for their own wrongs, such as torts and professional malpractice." Id., § 12:4, p. 12-12.

With this background in mind, we turn to the merits of the plaintiff's claim. General Statutes § 34-222 provides in relevant part: "Subject to the Constitution of this state, the laws of the state or other jurisdiction under which a foreign limited liability company is organized shall govern its organization and internal affairs and the liability of its managers and members. . . ." Accordingly, when a limited liability company is incorporated in another state, our statutes mandate application of the laws of that foreign state. See also *Kalb, Voorhis & Co.* v. *American Financial Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) (applying New York's interest analysis to determine that state of incorporation determines when corporate form will be disregarded and whether liability should be imposed); *Soviet Pan Am Travel Effort* v. *Travel Committee, Inc.*, 756 F. Sup. 126, 131 (S.D.N.Y. 1991) (determining that "the state of incorporation has the greater interest in determining when and if that insulation [which protects corporate employees] is to be stripped away"); 2 Restatement (Second), Conflict of Laws § 307, p. 328 (1971) ("[t]he local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability . . . to its creditors for corporate debts"). Because Retail Relief was incorporated in Delaware,

we look to Delaware law to determine the extent of the defendants' liability.

We begin our analysis with the text of § 18-303 (a) of title 6 of the Delaware Code Annotated.[5] Section 18-303 (a) provides in relevant part: "Except as otherwise provided by this chapter, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company, and *no member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company solely by reason of being a member or acting as a manager of the limited liability company.*" (Emphasis added.)

The plaintiff claims that § 18-303 (a) does not shield limited liability company members from individual liability based on their personal conduct. In response, the defendants argue that their mere status as limited

---

[5] "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine the meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 212, 901 A.2d 673 (2006).

Although we apply the substantive law of Delaware because Retail Relief was incorporated there, procedural issues such as how this court interprets statutes are governed by Connecticut law. *Burton* v. *Burton*, 189 Conn. 129, 139 n.8, 454 A.2d 1282 (1983). Thus, we employ § 1-2z to establish a method of interpreting § 18-303 of the Delaware Code Annotated.

liability company members with Retail Relief exempts them from all personal liability and they rely in particular on the following language from the Delaware statute: "[N]o member or manager of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company *solely* by reason of being a member or acting as a manager of the limited liability company." (Emphasis added.) Del. Code Ann. tit. 6, § 18-303 (a) (2005).

To resolve the plaintiff's claim, we must ascertain the meaning of the word "solely." Where, as here, no statutory definition of a word is provided, we turn to General Statutes § 1-1 (a), which provides: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." "To ascertain the commonly approved usage of a word, we look to the dictionary definition of the term." (Internal quotation marks omitted.) *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 678, 911 A.2d 300 (2006). "[S]olely" is defined to mean "to the exclusion of alternate or competing things . . . ." Webster's Third New International Dictionary. Thus, the statute plainly provides that a limited liability company member cannot be held liable for the malfeasance of a limited liability company by virtue of his membership in the limited liability company alone; in other words, he must do more than merely be a member in order to be liable personally for an obligation of the limited liability company. The statute thus does not preclude individual liability for members of a limited liability company if that liability is not based simply on the member's affiliation with the company.[6]

---

[6] Had the legislature intended for the limited liability company status to absolve its members of all personal liability, the legislature easily could have so provided. See *Stitzer* v. *Rinaldi's Restaurant*, 211 Conn. 116, 119, 557 A.2d 1256 (1989) (legislature knows how to use limiting terms when it chooses to do so); *Monaco* v. *Turbomotive, Inc.*, 68 Conn. App. 61, 67, 789 A.2d 1099 (2002) (legislature knows how to draft legislation consistent with its intent).

Several Delaware courts have reached this same conclusion. As the Delaware Court of Chancery has observed, "[§] 18-303 (a) protects members and managers of [a limited liability company] against liability for any obligations of the [limited liability company] solely by reason of being or acting as [company] members or managers. But, its phrase, 'solely by reason of being a member . . .' *does* imply that there are situations where [limited liability company] members and managers *would not* be shielded by this provision. As two leading Delaware corporation law treatise commentators have observed: 'The word "solely," which is used in [§] 18-303, indicates that a member or manager will not be liable for the debts, obligations, or liabilities of a Delaware [limited liability company] only by reason of being a member or manager; however, other acts or events could result in the imposition of liability upon or assumption of liability by a member or manager.' " (Emphasis added.) *Pepsi-Cola Bottling Co. of Salisbury, Maryland* v. *Handy*, Docket No. 1973-S, 2000 WL 364199, *3–4 (Del. Ch. March 15, 2000).

"Under Delaware law, a limited liability company formed under the Delaware Limited Liability Company Act [Del. Code Ann tit. 6, § 18-101 et seq.] is treated for liability purposes like a corporation." *Wellman* v. *Dow Chemical Co.*, United States District Court, Docket No. 05-280-SLR, 2007 WL 842084, *2 (D. Del. March 20, 2007). According to *St. James Recreation, LLC* v. *Rieger Opportunity Partners, LLC*, Docket No. 19346, 2003 WL 22659875, *6–8 (Del. Ch.), 29 Del. J. Corp. L. 634 (November 5, 2003): "The default common-law rule is that corporate officials may be held individually liable for their tortious conduct, even if undertaken while acting in their official capacity. . . . [V]arious courts of [the state of Delaware] have recognized that executives, directors and officers of an entity can be held *individually* liable for the fraudulent or tortious acts which they,

in their official capacities, commit, ratify or approve, despite the fact that they may have acted as an agent for or performed for the benefit of that entity at the time the fraudulent or tortious act was committed, ratified or approved." (Citations omitted; emphasis in original; internal quotation marks omitted.) See also *Brandywine Mushroom* v. *Hockessin Mushroom*, 682 F. Sup. 1307, 1313–14 (D. Del. 1988) (analogizing to cases in which corporate employees have been found personally liable and determining that members may be found individually liable despite affiliation with limited liability company); *Donsco, Inc.* v. *Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978) ("[a] corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort"). Accordingly, we conclude that although § 18-303 (a) of the Delaware Code Annotated shields the defendants from personal liability based solely on their affiliation with Retail Relief, it does not shield them from personal liability for their own tortious conduct.

As previously noted herein, claims under the act generally are viewed as sounding in tort. See *J2 Global Communications* v. *Vision Lab Telecommunications*, supra, United States District Court, Docket No. CV056348, *5–6; *US Fax Law Center, Inc.* v. *IHIRE, Inc.*, supra, 362 F. Sup. 2d 1252. We agree with the cases that have characterized claims under the act as tortious in nature.

Because those claims sound in tort, and § 18-303 (a) does not bar the defendants' liability for tortious conduct, we conclude that the trial court improperly rendered summary judgment in favor of the defendants on the issue of the defendants' personal liability for the plaintiff's claim.

## II

The plaintiff next claims that the trial court improperly applied choice of law principles to determine that New York law controls the present case. The plaintiff contends that no choice of law question exists because the plaintiff brought this action pursuant to a federal statute and, therefore, federal substantive law should govern the outcome of the present case. Accordingly, the plaintiff claims that the trial court improperly relied on state substantive law, specifically New York Civil Practice Law and Rules § 901 (b), to conclude that the plaintiff's class action claim is barred. We disagree.

We begin with a brief review of choice of law issues in diversity cases. Under *Erie Railroad Co.* v. *Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), a federal court in a diversity case is required to apply the substantive law of the state in which it is located. "[*Erie Railroad Co.*] expressed a policy that touches vitally the proper distribution of judicial power between [s]tate and federal courts. In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a [s]tate court. The nub of the policy that underlies [*Erie Railroad Co.*] is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a [s]tate court a block away should not lead to a substantially different result." *Guaranty Trust Co.* v. *York,* 326 U.S. 99, 109, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945). The Second Circuit Court of Appeals noted *Erie Railroad Co.*'s twin goals in *Morse* v. *Elmira Country Club,* 752 F.2d 35, 37 (2d Cir. 1984): "The rationale of [*Erie Railroad Co.*] was, first, that federal courts should obtain results substantially similar to those reached by

state courts considering the same cause of action, and, second, that federal courts should avoid application of federal law if that application would significantly encourage forum shopping by prospective out-of-state litigants."

In the present case, the New York plaintiff brought his claim under the act in Connecticut state court against the defendants, both Connecticut residents. Thus, we face the reverse of the typical *Erie Railroad Co.* situation. The plaintiff is correct that ordinarily when *Erie Railroad Co.* is reversed this way, a state court hearing a federal case is normally required to apply federal substantive law and state procedural law. "Just as federal courts are constitutionally obligated to apply state law to state claims . . . so too the Supremacy Clause imposes on state courts a constitutional duty to proceed in such manner that all the substantial rights of the parties under controlling federal law [are] protected." (Citation omitted; internal quotation marks omitted.) *Felder* v. *Casey,* 487 U.S. 131, 151, 108 S. Ct. 2302, 101 L. Ed. 2d 123 (1988).

A specific provision of the act, however, carves out an exception to this general rule. Under § 227 (b) (3) of the act, it is state substantive law that determines, as a preliminary matter, whether a federal action under the act may be brought in state court. A "person or entity" may bring such an action only "if otherwise permitted by the laws or rules of court of a [s]tate . . . ." 47 U.S.C. § 227 (b) (3) (2000). Thus, "the [act] specifically provides that state law will determine whether a cause of action lies in any given state and what types of actions are permissible." *Rudgayzer & Gratt* v. *LRS Communications, Inc.*, 6 Misc. 3d 20, 23, 789 N.Y.S.2d 601 (2004). "[T]he [act's] 'if otherwise permitted clause' defers to the state court's laws and rules and gives the state court discretion over the administration of the [act]." *Ganci* v. *Cape Canaveral*

*Tour & Travel, Inc.*, Docket No. 18462/03, 2004 NY Slip Op. 50651 (N.Y. Sup. April 15, 2004); see also *Holster* v. *Gatco, Inc.*, 485 F. Sup. 2d 179, 184 (E.D.N.Y. 2007) ("the language of the [act] clearly indicates that [it] merely enables states to permit a cause of action and contemplates that the laws or rules of the courts of the state may restrict such actions"); *Rudgayzer & Gratt* v. *LRS Communications, Inc.*, 3 Misc. 3d 159, 169, 776 N.Y.S.2d 158 (2003) (noting that " '*Erie* [*Railroad Co.*] in reverse' theory does not apply and the courts of New York State are not mandated to allow a . . . class action [under the act], in violation of [New York Civil Practice Law and Rules] § 901 [b]").

Because the act directs us to look to "the laws or rules of court of a state" in order to determine whether a claim under the act may be brought in that state, we must first determine whether New York or Connecticut law applies to the present action and then analyze whether such an action is authorized under the applicable state law.

As noted previously herein, claims under the act sound in tort, and "[u]nder Connecticut choice of law rules, for the plaintiff's claims that sound in tort . . . we apply the law of the state in which the plaintiff was injured, unless to do so would produce an arbitrary or irrational result." *Macomber* v. *Travelers Property & Casualty Corp.*, 277 Conn. 617, 640, 894 A.2d 240 (2006). Although the defendants are residents of Connecticut, the fax complained of was both sent and received in New York. Because the alleged injury occurred in New York and because application of New York law does not produce an arbitrary or irrational result, we conclude that New York law applies to the present action. Accordingly, we look to New York substantive law to determine whether the plaintiff may maintain his class action claim pursuant to the act.

New York Civil Practice Law and Rules § 901 (b) (McKinney 2006) provides: "Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action." According to § 901 (b), the plaintiff may bring a class action only if the statute on which the action is based specifically authorizes the action to be brought as a class action. See *Rudgayzer & Gratt* v. *LRS Communications, Inc.*, supra, 6 Misc. 3d 22 ("[§] 901 [b] bars a class action to recover a statutory penalty, such as that provided for by the [act], unless the statute providing for the penalty specifically authorizes such a class action").

The plaintiff in the present case cannot maintain this class action under § 901 (b) because the act does not specifically authorize class actions for the recovery of the minimum recovery, $500, established in the act. See also *Holster* v. *Gatco, Inc.*, supra, 485 F. Sup. 2d 185 ("New York state courts have held that class actions seeking penalties under the [act] may not be maintained in New York state court"); *Rudgayzer & Gratt* v. *Cape Canaveral Tour & Travel, Inc.*, 22 App. Div. 3d 148, 152, 799 N.Y.S.2d 795 (2005) (noting that "the [act] does not specifically authorize a class action"); *Rudgayzer & Gratt* v. *LRS Communications, Inc.*, supra, 6 Misc. 3d 21–22 ("the language of the [act] . . . in combination with the provisions of [§] 901 [b], makes it clear that no . . . class action [under the act] is available in the New York [s]tate courts" [citation omitted]).

The plaintiff further claims that § 901 (b) is procedural rather than substantive and thus should not operate to bar a claim under the act brought in another state. We are not persuaded that § 901 (b) is procedural.

The distinction between procedural and substantive laws is well settled. "Procedural statutes have been

traditionally viewed as affecting remedies, not substantive rights, and therefore leave the preexisting scheme intact. . . . While there is no precise definition of either [substantive or procedural law], it is generally agreed that a substantive law creates, defines and regulates rights while a procedural law prescribes the methods of enforcing such rights or obtaining redress." (Citations omitted; internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 621, 872 A.2d 408 (2005). It is clear that § 901 (b) is substantive because it abridges the rights of individuals to bring class action claims in New York state. We have determined that statutes, like § 901 (b), that affect an individual's cause of action clearly are substantive in nature. See *Doe* v. *Norwich Roman Catholic Diocesan Corp.*, 279 Conn. 207, 219, 901 A.2d 673 (2006) ("[i]t is beyond dispute that [General Statutes] § 1-1d is substantive in nature because it generally gives persons . . . legal capacity, rights, powers, privileges, duties, liabilities").

Additionally, the United States District Court for the Southern District of New York has noted that "the bulk of cases to address the applicability of [New York Civil Practice Law and Rules] § 901 (b) have decided that the statute is substantive and applies with equal force in federal litigation." *Leider* v. *Ralfe*, 387 F. Sup. 2d 283, 291 (S.D.N.Y. 2005); see also *Holster* v. *Gatco, Inc.*, supra, 485 F. Sup. 2d 185 ("the majority of courts have concluded that § 901 [b] is a substantive law"); *Noble* v. *93 University Place Corp.*, 224 F.R.D. 330, 341 n.83 (S.D.N.Y. 2004) (noting that "[§] 901 [b] is arguably substantive").[7] In *Leider*, the plaintiffs alleged both fed-

---

[7] In *Leider*, the District Court cites the following cases that have applied New York Civil Practice Law and Rules § 901 (b) in federal court to support its conclusion that § 901 (b) is substantive in nature: *United States* v. *Dentsply International, Inc.*, United States District Court, Docket No. 99-005-SLR 2001 WL 624807 (D. Del. 2001); *In re Microsoft Corp. Antitrust Litigation*, 127 F. Sup. 2d 702 (D. Md.), opinion supplemented by 2001 WL 137254 (D. Md. February 15, 2001); *In re Relafen Antitrust Litigation*, 221 F.R.D. 260 (D. Mass. 2004); *Ansoumana* v. *Gristede's Operating Corp.*, 201 F.R.D. 81

eral and state claims in federal court. To determine whether § 901 (b) would operate to bar the plaintiffs' class action, the District Court first had to determine whether § 901 (b) was substantive or procedural in nature. The court noted that "[u]nder *Erie* [*Railroad Co.*], federal courts should obtain results substantially similar to those reached by state courts considering the same cause of action, and . . . should avoid application of federal law if that application would significantly encourage forum shopping by prospective out-of-state litigants. . . . Courts have concluded that [New York Civil Practice Law and Rules] § 901 (b) must apply in a federal forum because it would contravene both of these mandates to allow plaintiffs to recover on a class-wide basis in federal court when they are unable to do the same in state court." (Citation omitted; internal quotation marks omitted.) *Leider* v. *Ralfe,* supra, 291.

We agree with the District Court's conclusion that if we were to determine that § 901 (b) did not apply to the plaintiff's claim, we would encourage forum shopping. Such an outcome would frustrate the policies underlying both *Erie Railroad Co.* and general choice of law principles. See *Frenette* v. *Vickery,* 522 F. Sup. 1098, 1100 (D. Conn. 1981) ("[t]o hold otherwise would indeed frustrate the *Erie* [*Railroad Co.*] goals of minimizing forum shopping in the state or federal courts and avoiding the inequitable administration of laws within a particular state"). Accordingly, because the plaintiff is unable to maintain a class action pursuant to the act in a New York state court, the plaintiff is likewise unable to maintain the same class action in the courts of this state, where we apply New York law according to choice of law principles.

We conclude that the trial court properly determined that New York Civil Practice Law and Rules § 901 (b)

(S.D.N.Y. 2001); and *Dornberger* v. *Metropolitan Life Ins. Co.*, 182 F.R.D. 72 (S.D.N.Y. 1998).

is substantive and operates to bar the plaintiff's class action claim. Accordingly, we conclude that the trial court properly rendered summary judgment in favor of the defendants on this issue.

### III

The plaintiff last claims that, even if New York Civil Practice Law and Rules § 901 (b) precludes the class action aspect of the present case, the trial court improperly rendered summary judgment in favor of the defendants on the plaintiff's personal claim for a violation of the act. In particular, the plaintiff claims that the trial court improperly concluded that New York General Business Law § 396-aa bars the plaintiff's individual claim under the act. We agree.

As a preliminary matter, we briefly review the procedural history relevant to this claim. In the trial court, the defendants claimed in their motion for summary judgment that the plaintiff pleaded that he had received a one page fax and did not allege that the fax was received between 6 a.m. and 9 p.m. in violation of New York General Business Law § 396-aa. Additionally, the defendants argued that if an unsolicited fax advertisement is not barred by § 396-aa, then it is not barred by the act. The trial court granted the defendants' motion for summary judgment without filing a memorandum of decision. Instead, the trial court briefly noted that it was rendering summary judgment for the reasons set forth in the defendants' motion.[8] As we noted earlier, therefore, we construe the trial court's ruling as implicitly agreeing with the defendants' claims of law as they were set forth in the motion for summary judgment.

New York General Business Law § 396-aa (1) (McKinney 1996) provides in relevant part: "It shall be unlawful

---

[8] The trial court simply rendered summary judgment as a matter of law "[f]or the reasons set forth in paragraphs one through twenty-three of [the defendants'] motion."

for a person, corporation, partnership or association to initiate the unsolicited transmission of telefacsimile messages promoting goods or services for purchase by the recipient of such messages. . . ." The statute further provides an exception from liability for certain transmissions: "This section shall not apply . . . to transmissions not exceeding five pages received between the hours of 9:00 P.M. and 6:00 A.M. local time."[9] N.Y. Gen. Bus. Law § 396-aa (McKinney 1996).

The trial court evidently concluded that § 396-aa precludes the plaintiff's individual claim because the fax underlying the plaintiff's complaint fell within the exception contained in that statute. That is, because the plaintiff failed to allege that he had received an unsolicited fax advertisement between the hours of 6 a.m. and 9 p.m., or that he had received an unsolicited fax advertisement in excess of five pages between the hours of 6 a.m. and 9 p.m., the fax at issue is not actionable under § 396-aa.

Having determined that the defendants' fax to the plaintiff did not violate New York General Business Law § 396-aa, the trial court rendered summary judgment in favor of the defendants because it agreed with them that "if the unsolicited transmission of a fax advertisement is not barred by [§ 396-aa] said transmission is not barred by the act." In other words, the trial court agreed that because the fax was permitted by state law, it could not be prohibited by federal law. Essentially, the trial court concluded that New York state law preempts or supersedes the application of the act. On appeal, the plaintiff argues that this conclusion is improper. We agree.

The supremacy clause of the United States constitution provides in relevant part: "This Constitution, and

---

[9] Although this language was later removed from § 396-aa, neither party disputes that the language was part of the statute and in effect at the time that the fax in the present case was sent in 2002.

the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ." U.S. Const., art. VI. "[T]he supremacy clause mandates that federal law overrides, i.e., preempts, any state regulation where there is an actual conflict between the two sets of legislation such that both cannot stand, for example, if federal law forbids an act which state legislation requires. Moreover, where Congress acts pursuant to a plenary power, it may specifically prohibit parallel state legislation, i.e., occupy or preempt, the field." 1 R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law, Substance and Procedure (1986) § 12.1, p. 623. Thus, the defendants' contention in the trial court that the act cannot prohibit what New York General Business Law § 396-aa allows, or, in other words, that New York state law preempts the act, contradicts traditional supremacy clause jurisprudence. We therefore conclude that the trial court's acceptance of this reasoning was improper.

Under the act, it is unlawful "for any person within the United States . . . to use any telephone [fax] machine, computer, or other device to send an unsolicited advertisement to a telephone [fax] machine . . . ." 47 U.S.C. § 227 (b) (1) (C) (2000). The act does not create any exception for faxes sent under a specified page limit or during a certain time of day. Rather, the act prohibits all unsolicited fax advertisements, and the plaintiff therefore has alleged facts in his complaint sufficient to state a cause of action under the act. Furthermore, as we noted previously, New York General Business Law § 396-aa cannot preempt the plaintiff's federal cause of action. See *Minnesota ex rel. Hatch* v. *Sunbelt Communications & Marketing*, 282 F. Sup. 2d 976, 984 (D. Minn. 2002) (state statute cannot authorize violation of federal statute); see also *Howlett* v. *Rose*, 496 U.S. 356, 375, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990) ("[t]he

elements of, and the defenses to, a federal cause of action are defined by federal law").

The defendants argue that *Rudgayzer & Gratt* v. *Enine, Inc.*, 193 Misc. 2d 449, 749 N.Y.S.2d 855 (2002), and *Rudgayzer & Gratt* v. *Enine, Inc.*, 4 Misc. 3d 4, 779 N.Y.S.2d 882 (2004), are the only New York decisions that bear on New York General Business Law § 396-aa and that these two cases both held that that statute overrides the act. We disagree. The Civil Court of the city of New York initially concluded that the act violates the first amendment, and, thus, having declared the act unconstitutional, applied § 396-aa only instead of the act. *Rudgayzer & Gratt* v. *Enine, Inc.*, supra, 193 Misc. 2d 449. On appeal, the New York Supreme Court overturned the decision on this constitutional issue alone. *Rudgayzer & Gratt* v. *Enine, Inc.*, supra, 4 Misc. 3d 13–15. Because the defendants have not challenged the constitutionality of the act, we find these cases to be inapposite.

For the foregoing reasons, we conclude that the trial court improperly rendered summary judgment in favor of the defendants on the plaintiff's individual claim of a violation of the act.

The judgment is affirmed with respect to the plaintiff's class action claim under the act, the judgment is reversed with respect to the plaintiff's claim that the defendants are personally liable for their tortious conduct and with respect to the plaintiff's individual capacity claim under the act, and the case is remanded for further proceedings according to law.

In this opinion the other justices concurred.