Justice Ginsburg,
with whom Justice Kennedy, Justice Breyer, and Justice Alito join, dissenting.
The Court today approves Shady Grove’s attempt to transform a $500 case into a $5 million award, although the State creating the right to recover has proscribed this alchemy. If Shady Grove had filed suit in New York state court, the 2% interest payment authorized by New York Ins. Law Ann. § 5106(a) (West 2009) as a penalty for overdue benefits would, by Shady Grove’s own measure, amount to no more than *437 $500. By instead filing in federal court based on the parties’ diverse citizenship and requesting class certification, Shady Grove hopes to recover, for the class, statutory damages of more than $5 million. The New York Legislature has barred this remedy, instructing that, unless specifically permitted, “an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.” N. Y. Civ. Prac. Law Ann. (CPLR) § 901(b) (West 2006). The Court nevertheless holds that Federal Rule of Civil Procedure 23, which prescribes procedures for the conduct of class actions in federal courts, preempts the application of § 901(b) in diversity suits.
The Court reads Rule 23 relentlessly to override New York’s restriction on the availability of statutory damages. Our decisions, however, caution us to ask, before undermining state legislation: Is this conflict really necessary? Cf. Traynor, Is This Conflict Really Necessary? 37 Texas L. Rev. 657 (1959). Had the Court engaged in that inquiry, it would not have read Rule 23 to collide with New York’s legitimate interest in keeping certain monetary awards reasonably bounded. I would continue to interpret Federal Rules with awareness of, and sensitivity to, important state regulatory policies. Because today's judgment radically departs from that course, I dissent.
I
A
“Under the Erie doctrine,” it is long settled, “federal courts sitting in diversity apply state substantive law and federal procedural law.” Gasperini v. Center for Humanities, Inc., 518 U. S. 415, 427 (1996); see Erie B. Co. v. Tompkins, 304 U. S. 64 (1938). Justice Harlan aptly conveyed the importance of the doctrine; he described Erie as “one of the modern cornerstones of our federalism, expressing policies that profoundly touch the allocation of judicial power between the state and federal systems.” Hanna v. Plumer, *438 380 U. S. 460, 474 (1965) (concurring opinion). Although we have found Erie’s application “sometimes [to be] a challenging endeavor,” Gasperini, 518 U. S., at 427, two federal statutes mark our way.
The first, the Rules of Decision Act,[1] prohibits federal courts from generating substantive law in diversity actions. See Erie, 304 U. S., at 78. Originally enacted as part of the Judiciary Act of 1789, this restraint serves a policy of prime importance to our federal system. We have therefore applied the Act “with an eye alert to . . . avoiding disregard of State law.” Guaranty Trust Co. v. York, 326 U. S. 99, 110 (1945).
The second, the Rules Enabling Act, enacted in 1934, authorizes us to “prescribe general rules of practice and procedure” for the federal courts, but with a crucial restriction: “Such rules shall not abridge, enlarge or modify any substantive right.” 28 U. S. C. § 2072. Pursuant to this statute, we have adopted the Federal Rules of Civil Procedure. In interpreting the scope of the Rules, including, in particular, Rule 23, we have been mindful of the limits on our authority. See, e. g., Ortiz v. Fibreboard Corp., 527 U. S. 815, 845 (1999) (The Rules Enabling Act counsels against “adventurous application” of Rule 23; any tension with the Act “is best kept within tolerable limits.”); Amchem Products, Inc. v. Windor, 521 U. S. 591, 612-613 (1997). See also Semtek Int’l Inc. v. Lockheed Martin Corp., 531 U. S. 497, 503-504 (2001).
If a Federal Rule controls an issue and directly conflicts with state law, the Rule, so long as it is consonant with the Rules Enabling Act, applies in diversity suits. See Hanna, 380 U. S., at 469-474. If, however, no Federal Rule or statute governs the issue, the Rules of Decision Act, as inter *439 preted in Erie, controls. That Act directs federal courts, in diversity cases, to apply state law when failure to do so would invite forum shopping and yield markedly disparate litigation outcomes. See Gasperini, 518 U. S., at 428; Hanna, 380 U. S., at 468. Recognising that the Rules of Decision Act and the Rules Enabling Act simultaneously frame and inform the Erie analysis, we have endeavored in diversity suits to remain safely within the bounds of both congressional directives.
B
In our prior decisions in point, many of them not mentioned in the Court’s opinion, we have avoided immoderate interpretations of the Federal Rules that would trench on state prerogatives without serving any countervailing federal interest. “Application of the Hanna analysis,” we have said, “is premised on a ‘direct collision’ between the Federal Rule and the state law.” Walker v. Armco Steel Corp., 446 U. S. 740, 749-750 (1980) (quoting Hanna, 380 U. S., at 472). To displace state law, a Federal Rule, “when fairly construed,” must be “‘sufficiently broad’” so as “to ‘control the issue’ before the court, thereby leaving no room for the operation of that law.” Burlington Northern R. Co. v. Woods, 480 U. S. 1, 4-5 (1987) (quoting Walker, 446 U. S., at 749-750, and n. 9; emphasis added); cf. Stewart Organization, Inc. v. Ricoh Corp., 487 U. S. 22, 37-38 (1988) (Scalia, J., dissenting) (“[I]n deciding whether a federal... Rule of Procedure encompasses a particular issue, a broad reading that would create significant disuniformity between state and federal courts should be avoided if the text permits.”).
In pre-Hanna decisions, the Court vigilantly read the Federal Rules to avoid conflict with state laws. In Palmer v. Hoffman, 318 U. S. 109, 117 (1943), for example, the Court read Federal Rule 8(c), which lists affirmative defenses, to control only the manner of pleading the listed defenses in diversity cases; as to the burden of proof in such cases, Palmer held, state law controls.
*440 Six years later, in Ragan v. Merchants Transfer & Warehouse Co., 337 U. S. 530 (1949), the Court ruled that state law determines when a diversity suit commences for purposes of tolling the state limitations period. Although Federal Rule 3 specified that “[a] civil action is commenced by filing a complaint with the court,” we held that the Rule did not displace a state law that tied an action’s commencement to service of the summons. Id., at 531-533. The “cause of action [wa]s created by local law,” the Court explained, therefore “the measure of it [wa]s to be found only in local law.” Id., at 533.
Similarly in Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541 (1949), the Court held applicable in a diversity action a state statute requiring plaintiffs, as a prerequisite to pursuit of a stockholder’s derivative action, to post a bond as security for costs. At the time of the litigation, Rule 23, now Rule 23.1, addressed a plaintiff’s institution of a derivative action in federal court. Although the Federal Rule specified prerequisites to a stockholder’s maintenance of a derivative action, the Court found no conflict between the Rule and the state statute in question; the requirements of both could be enforced, the Court observed. See id., at 556. Burdensome as the security-for-costs requirement may be, Cohen made plain, suitors could not escape the upfront outlay by resorting to the federal court’s diversity jurisdiction.
In all of these cases, the Court stated in Hanna, “the scope of the Federal Rule was not as broad as the losing party urged, and therefore, there being no Federal Rule which covered the point in dispute, Erie commanded the enforcement of state law.” 380 U. S., at 470. In Hanna itself, the Court found the clash “unavoidable,” ibid.) the petitioner had effected service of process as prescribed by Federal Rule 4(d)(1), but that “how-to” method did not satisfy the special Massachusetts law applicable to service on an executor or administrator. Even as it rejected the Massachusetts prescription in favor of the federal procedure, however, “[t]he majority in Hanna recognized... that federal rules ... must *441 be interpreted by the courts applying them, and that the process of interpretation can and should reflect an awareness of legitimate state interests.” R. Fallon, J. Manning, D. Meltzer, & D. Shapiro, Hart and Wechsler’s The Federal Courts and the Federal System 593 (6th ed. 2009) (hereinafter Hart & Wechsler).
Following Hanna, we continued to “interpre[t] the federal rules to avoid conflict with important state regulatory policies.” Hart & Wechsler 593. In Walker, the Court took up the question whether Ragan should be overruled; we held, once again, that Federal Rule 3 does not directly conflict with state rules governing the time when an action commences for purposes of tolling a limitations period. 446 U. S., at 749-752. Rule 3, we said, addresses only “the date from which various timing requirements of the Federal Rules begin to run,” id., at 751, and does not “purpor[t] to displace state tolling rules,” id., at 750-751. Significant state policy interests would be frustrated, we observed, were we to read Rule 3 as superseding the state rule, which required actual service on the defendant to stop the clock on the statute of limitations. Id., at 750-752.
We were similarly attentive to a State’s regulatory policy in Gasperini. That diversity case concerned the standard for determining when the large size of a jury verdict warrants a new trial. Federal and state courts alike had generally employed a “shock the conscience” test in reviewing jury awards for excessiveness. See 518 U. S., at 422. Federal courts did so pursuant to Federal Rule 59(a) which, as worded at the time of Gasperini, instructed that a trial court could grant a new trial “for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.” Fed. Rule Civ. Proc. 59(a) (West 1995). In an effort to provide greater control, New York prescribed procedures under which jury verdicts would be examined to determine whether they “deviate[d] materially from what would be reasonable compensation.” See *442 Gasperini, 518 U. S., at 423-425 (quoting CPLR § 5501(c)). This Court held that Rule 59(a) did not inhibit federal-court accommodation of New York’s invigorated test.
Most recently, in Semtek, we addressed the claimpreclusive effect of a federal-court judgment dismissing a diversity action on the basis of a California statute of limitations. The case came to us after the same plaintiff renewed the same fray against the same defendant in a Maryland state court. (Plaintiff chose Maryland because that State’s limitations period had not yet run.) We held that Federal Rule 41(b), which provided that an involuntary dismissal “operate[d] as an adjudication on the merits,” did not bar maintenance of the renewed action in Maryland. To hold that Rule 41(b) precluded the Maryland courts from entertaining the case, we said, “would arguably violate the jurisdictional limitation of the Rules Enabling Act,” 531 U. S., at 503, and “would in many cases violate [Erie’s] federalism principle,” id., at 504.
In sum, both before and after Hanna, the above-described decisions show, federal courts have been cautioned by this Court to “interpre[t] the Federal Rules .. . with sensitivity to important state interests,” Gasperini, 518 U. S., at 427, n. 7, and a will “to avoid conflict with important state regulatory policies,” id., at 438, n. 22 (internal quotation marks omitted).[2] The Court veers away from that approach — and *443 conspicuously, its most recent reiteration in Gasperini, ante, at 405, n. 7 — in favor of a mechanical reading of Federal Rules, insensitive to state interests and productive of discord.
C
Our decisions instruct over and over again that, in the adjudication of diversity cases, state interests — whether advanced in a statute, e. g., Cohen, or a procedural rule, e. g., Gasperini — warrant our respectful consideration. Yet today, the Court gives no quarter to New York’s limitation on statutory. damages and requires the lower courts to thwart the regulatory policy at stake: To prevent excessive damages, New York’s law controls the penalty to which a defendant may be exposed in a single suit. The story behind § 901(b)’s enactment deserves telling.
In 1975, the Judicial Conference of the State of New York proposed a new class-action statute designed “to set up a flexible, functional scheme” that would provide “an effective, but controlled group remedy.” Judicial Conference Report on CPLR, reprinted in 1975 N. Y. Laws pp. 1477, 1493 (McKinney). As originally drafted, the legislation addressed only the procedural aspects of class actions; it specified, for example, five prerequisites for certification, eventually codified at § 901(a), that closely tracked those listed in Rule 23. See CPLR § 901(a) (requiring, for class certification, numer *444 osity, predominance, typicality, adequacy of representation, and superiority).
While the Judicial Conference proposal was in the New York Legislature’s hopper, “various groups advocated for the addition of a provision that would prohibit class action plaintiffs from being awarded a statutorily-created penalty . . . except when expressly authorized in the pertinent statute.” Sperry v. Crompton Corp., 8 N. Y. 3d 204, 211, 863 N. E. 2d 1012, 1015 (2007). These constituents “feared that recoveries beyond actual damages could lead to excessively harsh results.” Ibid. “They also argued that there was no need to permit class actions ... [because] statutory penalties .. . provided an aggrieved party with a sufficient economic incentive to pursue a claim.” Ibid. Such penalties, constituents observed, often far exceed a plaintiff’s actual damages. “When lumped together,” they argued, “penalties and class actions produce overkill.” Attachment to Letter from G. Perkinson, New York State Council of Retail Merchants, Inc., to J. Gribetz, Executive Chamber (June 4, 1975) (Legislative Report), Bill Jacket, L. 1975, Ch. 207.
Aiming to avoid “annihilating punishment of the defendant,” the New York Legislature amended the proposed statute to bar the recovery of statutory damages in class actions. Y. Alexander, Practice Commentaries, C901:ll, reprinted in 7B McKinney's Consolidated Laws of New York Ann., p. 104 (2006) (internal quotation marks omitted). In his signing statement, Governor Hugh Carey stated that the new statute “empowers the court to prevent abuse of the class action device and provides a contro lied remedy. ” Memorandum on Approving L. 1975, Ch. 207, reprinted in 1975 N. Y. Laws, at 1748 (emphasis added).
“[T]he final bill... was the result of a compromise among competing interests.” Sperry, 8 N. Y. 3d, at 211, 863 N. E. 2d, at 1015. Section 901(a) allows courts leeway in deciding whether to certify a class, but § 901(b) rejects the use of the class mechanism to pursue the particular remedy of statu *445 tory damages. The limitation was not designed with the fair conduct or efficiency of litigation in mind. Indeed, suits seeking statutory damages are arguably best suited to the class device because individual proof of actual damages is unnecessary. New York’s decision instead to block class-action proceedings for statutory damages therefore makes scant sense, except as a means to a manifestly substantive end: limiting a defendant’s liability in a single lawsuit in order to prevent the exorbitant inflation of penalties — remedies the New York Legislature created with individual suits in mind.[3]
D
Shady Grove contends — and the Court today agrees — that Rule 23 unavoidably preempts New York’s prohibition on the recovery of statutory damages in class actions. The Federal Rule, the Court emphasizes, states that Shady Grove’s suit “may be” maintained as a class action, which conflicts with § 901(b)’s instruction that it “may not” so proceed. Ante, at 399 (internal quotation marks omitted; emphasis deleted). Accordingly, the Court insists, § 901(b) “cannot apply in diversity suits unless Rule 23 is ultra vires.” Ibid. Concluding that Rule 23 does not violate the Rules Enabling Act, the Court holds that the federal provision controls Shady Grove’s ability to seek, on behalf of a class, a statutory penalty of over $5 million. Ante, at 406-410 (plurality opinion); *446 ante, at 431-436 (Stevens, J., concurring in part and concurring in judgment).
The Court, I am convinced, finds conflict where none is necessary. Mindful of the history behind § 901(b)’s enactment, the thrust of our precedent, and the substantive-rights limitation in the Rules Enabling Act, I conclude, as did the Second Circuit and every District Court to have considered the question in any detail,[4] that Rule 23 does not collide with § 901(b). As the Second Circuit well understood, Rule 23 prescribes the considerations relevant to class certification and postcertification proceedings — but it does not command that a particular remedy be available when a party sues in a representative capacity. See 549 F. 3d 137, 143 (2008).[5] Section 901(b), in contrast, trains on that latter issue. Sensibly read, Rule 23 governs procedural aspects of class litiga *447 tion, but allows state law to control the size of a monetary award a class plaintiff may pursue.
In other words, Rule 23 describes a method of enforcing a claim for relief, while § 901(b) defines the dimensions of the claim itself. In this regard, it is immaterial that § 901(b) bars statutory penalties in wholesale, rather than retail, fashion. The New York Legislature could have embedded the limitation in every provision creating a cause of action for which a penalty is authorized; § 901(b) operates as shorthand to the same effect. It is as much a part of the delineation of the claim for relief as it would be were it included claim by claim in the New York Code.
The Court single-mindedly focuses on whether a suit “may” or “may not” be maintained as a class action. See ante, at 398-401. Putting the question that way, the Court does not home in on the reason why. Rule 23 authorizes class treatment for suits satisfying its prerequisites because the class mechanism generally affords a fair and efficient way to aggregate claims for adjudication. Section 901(b) responds to an entirely different concern; it does not allow class members to recover statutory damages because the New York Legislature considered the result of adjudicating such claims en masse to be exorbitant.[6] The fair and efficient conduct of class litigation is the legitimate concern of Rule 23; the remedy for an infraction of state law, however, is the legitimate concern of the State's lawmakers and not of the federal rulemakers. Cf. Ely, The Irrepressible Myth of Erie, 87 Harv. L. Rev. 693,722 (1974) (It is relevant “whether the state provision embodies a substantive policy or repre *448 sents only a procedural disagreement with the federal rule-makers respecting the fairest and most efficient way of conducting litigation.”).
Suppose, for example, that a State, wishing to cap damages in class actions at $1 million, enacted a statute providing that “a suit to recover more than $1 million may not be maintained as a class action.” Under the Court’s reasoning— which attributes dispositive significance to the words “may not be maintained” — Rule 23 would preempt this provision, never mind that Congress, by authorizing the promulgation of rules of procedure for federal courts, surely did not intend to displace state-created ceilings on damages.[7] The Court suggests that the analysis might differ if the statute “limit[ed] the remedies available in an existing class action,” ante, at 401, such that Rule 23 might not conflict with a state statute prescribing that “no more than $1 million may be recovered in a class action.” There is no real difference in the purpose and intended effect of these two hypothetical statutes. The notion that one directly impinges on Rule 23's domain, while the other does not, fundamentally misperceives the office of Rule 23.[8]
*449 The absence of an inevitable collision between Rule 23 and § 901(b) becomes evident once it is comprehended that a federal court sitting in diversity can accord due respect to both state and federal prescriptions. Plaintiffs seeking to vindicate claims for which the State has provided a statutory penalty may pursue relief through a class action if they forgo statutory damages and instead seek actual damages or injunctive or declaratory relief; any putative class member who objects can opt out and pursue actual damages, if available, and the statutory penalty in an individual action. See, e. g., Mendez v. The Rodee Corp., 260 F. R. D. 38, 55 (WDNY 2009); Brzychnalski v. Unesco, Inc., 35 F. Supp. 2d 351, 353 (SDNY 1999).[9] See also Alexander, Practice Commentaries, at 105 (“Even if a statutory penalty or minimum recovery is involved, most courts hold that it can be waived, thus confining the class recovery to actual damages and eliminating the bar of CPLR 901(b).”). In this manner, the Second Circuit *450 explained, “Rule 23’s procedural requirements for class actions can be applied along with the substantive requirement of CPLR 901(b).” 549 F. 3d, at 144. In sum, while phrased as responsive to the question whether certain class actions may begin, § 901(b) is unmistakably aimed at controlling how those actions must end. On that remedial issue, Rule 23 is silent.
Any doubt whether Rule 23 leaves § 901(b) in control of the remedial issue at the core of this ease should be dispelled by our Erie jurisprudence, including Hanna, which counsels us to read Federal Rules moderately and cautions against stretching a Rule to cover every situation it could conceivably reach.[10] The Court states that “[tjhere is no reason ... to read Rule 23 as addressing only whether claims made eligible for class treatment by some other law should be certified as class actions.” Ante, at 399. To the contrary, Palmer, Ragan, Cohen, Walker, Gasperini, and Semtek provide good reason to look to the law that creates the right to recover. See supra, at 439-442. That is plainly so on a more accurate statement of what is at stake: Is there any reason to read Rule 23 as authorizing a claim for relief when the State that created the remedy disallows its pursuit on behalf of a class? None at all is the answer our federal system should give.
Notably, New York is not alone in its effort to contain penalties and minimum recoveries by disallowing class relief; Congress, too, has precluded class treatment for certain claims seeking a statutorily designated minimum recovery. See, e. g., 15 U. S. C. § 1640(a)(2)(B) (Truth in Lending Act) (“[I]n the case of a class action ... no minimum recovery shall be applicable.”); § 1693m(a)(2)(B) (Electronic Fund *451 Transfer Act) (same); 12 U. S. C. §4010(a)(2)(B)(i) (Expedited Funds Availability Act) (same). Today’s judgment denies to the States the full power Congress has to keep certain monetary awards within reasonable bounds. Cf. Beard v. Kindler, 558 U. S. 53, 62 (2009) (“In light of . . . federalism and comity concerns ... it would seem particularly strange to disregard state . . . rules that are substantially similar to those to which we give full force in our own courts.”). States may hesitate to create determinate statutory penalties in the future if they are impotent to prevent federal-court distortion of the remedy they have shaped.[11]
By finding a conflict without considering whether Rule 23 rationally should be read to avoid any collision, the Court unwisely and unnecessarily retreats from the federalism principles undergirding Erie. Had the Court reflected on the respect for state regulatory interests endorsed in our decisions, it would have found no cause to interpret Rule 23 so woodenly — and every reason not to do so. Cf. Traynor, 37 Texas L. Rev., at 669 (“It is bad enough for courts to prattle unintelligibly about choice of law, but unforgiveable when inquiry might have revealed that there was no real conflict.”).
*452 II
Because I perceive no unavoidable conflict between Rule 23 and § 901(b), I would decide this case by inquiring “whether application of the [state] rule would have so important an effect upon the fortunes of one or both of the litigants that failure to [apply] it would be likely to cause a plaintiff to choose the federal court.” Hanna, 380 U. S., at 468, n. 9. See Gasperini, 518 U. S., at 428.
Seeking to pretermit that inquiry, Shady Grove urges that the class-action bar in § 901(b) must be regarded as “procedural” because it is contained in the CPLR, which “govern[s] the procedure in civil judicial proceedings in all courts of the state.” Brief for Petitioner 34 (quoting CPLR § 101; emphasis in original). Placement in the CPLR is hardly dispositive. The provision held “substantive” for Erie purposes in Gasperini is also contained in the CPLR (§ 5501(e)), as are limitations periods, §201 et seq., prescriptions plainly “substantive” for Erie purposes however they may be characterized for other purposes, see York, 326 U. S., at 109-112. See also, e. g., 1 Restatement (Second) of Conflict of Laws § 133, Reporter’s Note, p. 369 (1969) (hereinafter Restatement) (“Under the rule of Erie... the federal courts have classified the burden of persuasion as to contributory negligence as a matter of substantive law that is governed by the rule of the State in which they sit even though the courts of that State have characterized their rule as procedural for choice-of-law purposes.”); Cook, “Substance” and “Procedure” in the Conflict of Laws, 42 Yale L. J. 333 (1933).
Shady Grove also ranks § 901(b) as “procedural” because “nothing in [the statute] suggests that it is limited to rights of action based on New York state law, as opposed to federal law or the law of other states”; instead it “applies to actions seeking penalties under any statute.” Brief for Petitioner 35-36. See also ante, at 432 (Stevens, J., concurring in part and concurring in judgment) (Section 901(b) cannot “be *453 understood as a rule that... serves the function of defining New York’s rights or remedies” because its “text ... expressly and unambiguously applies not only to claims based on New York law but also to claims based on federal law or the law of any other State.”).
It is true that § 901(b) is not specifically limited to claims arising under New York law. But neither is it expressly extended to claims arising under foreign law The rule prescribes, without elaboration either way, that “an action to recover a penalty . . . may not be maintained as a class action.” We have often recognized that “general words” appearing in a statute may, in fact, have limited application; “[t]he words 'any person or persons,’” for example, “are broad enough to comprehend every human being. But general words must not only be limited to cases within the jurisdiction of the state, but also to those objects to which the legislature intended to apply them.” United States v. Palmer, 3 Wheat. 610, 631 (1818) (opinion for the Court by Marshall, C. J.). See also Small v. United States, 544 U. S. 385, 388 (2005) (“In law, a legislature that uses the statutory . phrase 'any person’ may or may not mean to include 'persons’ outside the jurisdiction of the state.” (some internal quotation marks omitted)); Flora v. United States, 362 U. S. 145, 149 (1960) (The term ‘"any sum’ is a catchall [phrase,] . . . but to say this is not to define what it catches.”).
Moreover, Shady Grove overlooks the most likely explanation for the absence of limiting language: New York legislators make law with New York plaintiffs and defendants in mind, i. e., as if New York were the universe. See Baxter, Choice of Law and the Federal System, 16 Stan. L. Rev. 1, 11 (1963) (“[L]awmakers often speak in universal terms but must be understood to speak with reference to their constituents.”); ef. Smith v. United States, 507 U. S. 197, 204, n. 5 (1993) (presumption against extraterritoriality rooted in part in “the commonsense notion that Congress generally legislates with domestic concerns in mind”).
*454 The point was well put by Brainerd Currie in his seminal article on governmental interest analysis in confliet-of-laws cases. The article centers on a now-archaic Massachusetts law that prevented married women from binding themselves by contract as sureties for their husbands. Discussing whether the Massachusetts prescription applied to transactions involving foreign factors (a foreign forum, foreign place of contracting, or foreign parties), Currie observed:
“When the Massachusetts legislature addresses itself to the problem of married women as sureties, the undeveloped image in its mind is that of Massachusetts married women, husbands, creditors, transactions, courts, and judgments. In the history of Anglo-American law the domestic case has been normal, the conflict-of-laws case marginal.” Married Women’s Contracts: A Study in Conflict-of-Laws Method, 25 U. Chi. L. Rev. 227, 231 (1958) (emphasis added).
Shady Grove’s suggestion that States must specifically limit their laws to domestic rights of action if they wish their enactments to apply in federal diversity litigation misses the obvious point: State legislators generally do not focus on an interstate setting when drafting statutes.[12]
*455 Shady Grove also observes that a New York court has applied § 901(b) to a federal claim for relief under the Telephone Consumer Protection Act of 1991 (TCPA), 47 U. S. C. §227, see Rudgayzer & Gratt v. Cape Canaveral Tour & Travel, Inc., 22 App. Div. 3d 148, 799 N. Y. S. 2d 795 (2005), thus revealing §901(b)’s “procedural” cast. Brief for Petitioner 36. We note first that the TCPA itself calls for the application of state law. See Rudgayzer, 22 App. Div. 3d, at 149-150, 799 N. Y. S. 2d, at 796-797 (federal action authorized in state court “if otherwise permitted by the laws or rules of the court of [the] State” (quoting 47 U. S. C. § 227(b)(3))). See also Gottlieb v. Carnival Corp., 436 F. 3d 335, 342 (CA2 2006) (Sotomayor, J.) (“Congress sought, via the TCPA, to enact the functional equivalent of a state law.”). The TCPA, the Supreme Court of Connecticut has recognized, thus “carves out an exception to th[e] general rule” that “when Erie ... is reversed . . . , a state court hearing a federal case is normally required to apply federal substantive law”: “Under § 227(b)(3)... it is state substantive law that determines, as a preliminary matter, whether a federal action under the act may be brought in state court.” Weber v. U. S. Sterling Securities, Inc., 282 Conn. 722, 736, 924 A. 2d 816, 826 (2007) (in TCPA action governed by New York substantive law, § 901(b) applied even though the claim was pursued in Connecticut state court).
Moreover, statutes qualify as “substantive” for Erie purposes even when they have “procedural” thrusts as well. See, e. g., Cohen, 337 U. S., at 555; cf. Woods v. Interstate Realty Co., 337 U. S. 535, 536-538, and n. 1 (1949) (holding diversity ease must be dismissed based on state statute that, by its terms, governed only proceedings in state court). Statutes of limitations are, again, exemplary. They supply “substantive” law in diversity suits, see York, 326 U. S., at 109-112, even though, as Shady Grove acknowledges, state courts often apply the forum’s limitations period as a “procedural” bar to claims arising under the law of another State, see Reply Brief 24, n. 16; Tr. of Oral Arg. 16-17. See also *456 Restatement §§ 142-143 (when adjudicating a foreign cause of action, State may use either its own or the foreign jurisdiction’s statute of limitations, whichever is shorter). Similarly, federal courts sitting in diversity give effect to state laws governing the burden of proving contributory negligence, see Palmer v. Hoffman, 318 U. S. 109, 117 (1943), yet state courts adjudicating foreign causes of action often apply their own local law to this issue. See Restatement § 133 and Reporter’s Note.
In short, Shady Grove’s effort to characterize § 901(b) as simply “procedural” cannot successfully elide this fundamental norm: When no federal law or rule is dispositive of an issue, and a state statute is outcome affective in the sense our cases on Erie (pre- and post-Hanna) develop, the Rules of Decision Act commands application of the State’s law in diversity suits. Gasperini, 518 U. S., at 428; Hanna, 380 U. S., at 468, n. 9; York, 326 U. S., at 109. As this case starkly demonstrates, if federal courts exercising diversity jurisdiction are compelled by Rule 23 to award statutory penalties in class actions while New York courts are bound by §901(b)’s proscription, “substantial variations between state and federal [money judgments] may be expected.” Gasperini, 518 U. S., at 430 (quoting Hanna, 380 U. S., at 467-468 (internal quotation marks omitted)). The “variation” here is indeed “substantial.” Shady Grove seeks class relief that is ten thousand times greater than the individual remedy available to it in state court. As the plurality acknowledges, ante, at 415, forum shopping will undoubtedly result if a plaintiff need only file in federal instead of state court to seek a massive monetary award explicitly barred by state law. See Gasperini, 518 U. S., at 431 (“Erie precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court.”).[13] *457 The “accident of diversity of citizenship,” Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U. S. 487, 496 (1941), should not subject a defendant to such augmented liability. See Hanna, 380 U. S., at 467 (“The Erie rule is rooted in part in a realization that it would be unfair for the character or result of a litigation materially to differ because the suit had been brought in a federal court.”).
It is beyond debate that “a statutory cap on damages would supply substantive law for Erie purposes.” Gasperini, 518 U. S., at 428. See also id., at 439-440 (Stevens, J., dissenting) (“A state-law ceiling on allowable damages ... is a substantive rule of decision that federal courts must apply in diversity cases governed by New York law.”); id., at 464 (Scalia, J., dissenting) (“State substantive law controls what injuries are compensable and in what amount.”). In Gasperini, we determined that New York’s standard for measuring the alleged excessiveness of a jury verdict was designed to provide a control analogous to a damages cap. Id., at 429. The statute was framed as “a procedural instruction,” we noted, “but the State’s objective [wa]s manifestly substantive.” Ibid.
Gasperini’s observations apply with full force in this case. By barring the recovery of statutory damages in a class action, § 901(b) controls a defendant’s maximum liability in a suit seeking such a remedy. The remedial provision could have been written as an explicit cap: “In any class action seeking statutory damages, relief is limited to the amount the named plaintiff would have recovered in an individual suit.” That New York’s Legislature used other words to express the very same meaning should be inconsequential.
We have long recognized the impropriety of displacing, in a diversity action, state-law limitations on state-created rem *458 edies. See Woods, 337 U. S., at 538 (in a diversity case, a plaintiff “barred from recovery in the state court... should likewise be barred in the federal court”); York, 326 U. S., at 108-109 (federal court sitting in diversity “cannot afford recovery if the right to recover is made unavailable by the State nor can it substantively affect the enforcement of the right as given by the State”). Just as Erie precludes a federal court from entering a deficiency judgment when a State has “authoritatively announced that [such] judgments cannot be secured within its borders,” Angel v. Bullington, 330 U. S. 183, 191 (1947), so too Erie should prevent a federal court from awarding statutory penalties aggregated through a class action when New York prohibits this recovery. See also Ragan, 337 U. S., at 533 (“Where local law qualifies or abridges [a claim], the federal court must follow suit. Otherwise there is a different measure of the cause of action in one court than in the other, and the principle of Erie ... is transgressed.”). In sum, because “New York substantive law governs [this] claim for relief, New York law... guide[s] the allowable damages.” Gasperini, 518 U. S., at 437.[14]
III
The Court’s erosion of Erie’s federalism grounding impels me to point out the large irony in today’s judgment. Shady Grove is able to pursue its claim in federal court only by virtue of the recent enactment of the Class Action Fairness Act of 2005 (CAFA), 28 U. S. C. § 1332(d). In CAFA, Congress opened federal-court doors to state-law-based class actions so long as there is minimal diversity, at least 100 class *459 members, and at least $5 million in controversy. Ibid. By providing a federal forum, Congress sought to check what it considered to be the overreadiness of some state courts to certify class actions. See, e.g., S. Rep. No. 109-14, p. 4 (2005) (CAFA prevents lawyers from “gam[ing] the procedural rules [to] keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes.” (internal quotation marks omitted)); id., at 22 (disapproving “the 'I never met a class action I didn’t like’ approach to class certification” that “is prevalent in state courts in some localities”). In other words, Congress envisioned fewer — not more — class actions overall. Congress surely never anticipated that CAFA would make federal courts a mecca for suits of the kind Shady Grove has launched: class actions seeking state-created penalties for claims arising under state law — claims that would be barred from class treatment in the State’s own courts. Cf. Woods, 337 U. S., at 537 (“[T]he policy of Erie ... precluded] maintenance in . . . federal court ... of suits to which the State ha[s] closed its courts.”).[15]
* * *
I would continue to approach Erie questions in a manner mindful of the purposes underlying the Rules of Decision Act and the Rules Enabling Act, faithful to precedent, and respectful of important state interests. I would therefore hold that the New York Legislature’s limitation on the recovery of statutory damages applies in this case, and would affirm the Second Circuit’s judgment.

 The Rules of Decision Act directs that “[t]he laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.” 28 U. S. C. § 1652.

 Justice Stevens stakes out common ground on this point: “[FJederal rules,” he observes, “must be interpreted with some degree of ‘sensitivity to important state interests and regulatory policies,’ . . . and applied to diversity cases against the background of Congress’ command that such rules not alter substantive rights and with consideration of ‘the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts,' Hanna [v. Plumer], 380 U. S. [460, 473 (1965)].” Ante, at 418-419 (opinion concurring in part and concurring in judgment). See also ante, at 419-420 (“A ‘state procedural rule, though undeniably procedural in the ordinary sense of the term,’ may exist ‘to influence substantive outcomes,’... and may in some instances become so bound up with the state-created right or remedy that *443 it defines the scope of that substantive right or remedy.” (some internal quotation marks omitted)); ante, at 420 (“When a State chooses to use a traditionally procedural vehicle as a means of defining the scope of substantive rights or remedies, federal courts must recognize and respect that choice.”). Nevertheless, Justice Stevens sees no reason to read Rule 23 with restraint in this particular case; the Federal Rule preempts New York’s damages limitation, in his view, because § 901(b) is “a procedural rule that is not part of New York's substantive law.” Ante, at 416. This- characterization of § 901(b) does not mirror reality, as I later explain. See infra, at 452-458. But a majority of this Court, it bears emphasis, agrees that Federal Rules should be read with moderation in diversity suits to accommodate important state concerns.

 Even in the mine-run case, a class action can result in “potentially ruinous liability.” Advisory Committee’s Notes on Fed. Rule Civ. Proc. 23, 28 U. S. C. App., p. 143. A court’s decision to certify a class accordingly places pressure on the defendant to settle even unmeritorious claims. See, e. g., Coopers & Lybrand v. Livesay, 437 U. S. 463, 476 (1978). When representative plaintiffs seek statutory damages, pressure to settle may be heightened because a class action poses the risk of massive liability unmoored to actual injury. See, e. g., Ratner v. Chemical Bank New York Trust Co., 54 F. R. D. 412, 416 (SDNY 1972) (exercising “considerable discretion of a pragmatic nature” to refuse to certify a class because the plaintiffs suffered negligible actual damages but sought statutory damages of $13 million).

 See, e. g., In re Automotive Refinishing Paint Antitrust Litigation, 515 F. Supp. 2d 544, 549-551 (ED Pa. 2007); Leider v. Ralfe, 387 F. Supp. 2d 283, 289-292 (SDNY 2005); Dornberger v. Metropolitan Life Ins. Co., 182 F. R. D. 72, 84 (SDNY 1999). See also Weber v. U. S. Sterling Securities, Inc., 282 Conn. 722, 738-739, 924 A. 2d 816, 827-828 (2007) (§ 901(b) applied in Connecticut state court to action governed by New York substantive law).

 Shady Grove projects that a dispensation in favor of Allstate would require “courts in all diversity class actions ... [to] look to state rules and decisional law rather than to Rule 23 ... in making their class certification decisions.” Brief for Petitioner 55. This slippery-slope projection is both familiar and false. Cf. R. Bork, The Tempting of America 169 (1990) (“Judges and lawyers live on the slippery slope of analogies; they are not supposed to ski it to the bottom.”). In this case, CPLR § 901(a) lists the state-law prerequisites for class certification, but Allstate does not contend that § 901(a) overrides Rule 23. Brief for Respondent 18 (“There is no dispute that the criteria for class certification under state law do not apply in federal court; that is the ground squarely occupied by Rule 23.”). Federal courts sitting in diversity have routinely applied Rule 23’s certification standards, rather than comparable state provisions. See, e.g., In re New Motor Vehicles Canadian Export Antitrust Litigation, 522 F. 3d 6, 18-24 (CA1 2008); Order and Reasons in In re Katrina Canal Breaches Consol. Litigation, Civ. Action No. 05-4182 (ED La., Aug. 6, 2009).

 The Court disputes the strength of the evidence of legislative intent, see ante, at 403, but offers no alternative account of §901(b)’s purpose. Perhaps this silence indicates how very hard it would be to ascribe to § 901(b) any purpose bound up with the fairness and efficiency of processing eases. On its face, the proscription is concerned with remedies, i. e., the availability of statutory damages in a lawsuit. Legislative history confirms this objective, but is not essential to revealing it.

 There is, of course, a difference between “justly administering [a] remedy,” Sibbach v. Wilson & Co., 312 U. S. 1, 14 (1941), and prescribing the content of that remedy; if Rule 23 can be read to increase a plaintiff’s recovery from $1 million to some greater amount, the Rule has arguably “enlarge[d] ... [a] substantive right” in violation of the Rules Enabling Act. 28 U. S. C. § 2072(b). The plurality appears to acknowledge this point, stating that the Federal Rules we have found to be in compliance with the Act have not “altered ... available remedies.” Ante, at 407-408. But the Court’s relentless reading of Rule 23 today does exactly that: The Federal Rule, it says, authorizes the recovery of class-size statutory damages even though the New York provision instructs that such penalties shall not be available.

 The Court states that “[w]e cannot rewrite [a state law] to reflect our perception of legislative purpose.” Ante, at 408. But we can, of course, interpret the Federal Rules in light of a State’s regulatory policy to decide whether and to what extent a Rule preempts state law. See supra, at 439-442. Just as we read Federal Rule 3 in Walker v. Armco Steel Corp., *449 446 U. S. 740, 751 (1980), not to govern when a suit commences for purposes of tolling a state statute of limitations (although the Rule indisputably controls when an action commences for federal procedural purposes), so too we could read Rule 23 not to direct when a class action may be maintained for purposes of recovering statutoiy damages prescribed by state law. On this reading of Rule 23, no rewriting of § 901(b) is necessary to avoid a conflict.

 The New York Legislature appears to have anticipated this result. In discussing the remedial bar effected by § 901(b), the bill’s sponsor explained that a “statutory class action for actual damages would still be permissible.” S. Pink, [Sponsor’s] Memorandum, p. 2, Bill Jacket, L. 1975, Ch. 207. See also State Consumer Protection Board Memorandum (May 29, 1975), Bill Jacket, L. 1975, Ch. 207. On this understanding, New York courts routinely authorize class actions when the class waives its right to receive statutory penalties. See, e. g., Cox v. Microsoft Corp., 8 App. Div. 3d 39, 778 N. Y. S. 2d 147 (2004); Pesantez v. Boyle Env. Servs., Inc., 251 App. Div. 2d 11, 673 N. Y. S. 2d 659 (1998); Ridge Meadows Homeowners’ Assn., Inc. v. Tara Development Co., 242 App. Div. 2d 947, 665 N. Y. S. 2d 361 (1997); Super Glue Corp. v. Avis Rent A Car System, Inc., 132 App. Div. 2d 604, 517 N. Y. S. 2d 764 (1987); Weinberg v. Hertz Corp., 116 App. Div. 2d 1, 499 N. Y. S. 2d 693 (1986).

 The plurality notes that “we have rejected, every statutory challenge to a Federal Rule that has come before us.” Ante, at 407. But it omits that we have interpreted Rules with due restraint, including Rule 23, thus diminishing prospects for the success of such challenges. See Ortiz v. Fibreboard Corp., 527 U. S. 815, 842 (1999); Amchem Products, Inc. v. Windsor, 521 U. S. 591, 612-613 (1997); supra, at 439-443.

 States have adopted a variety of formulations to limit the use of class actions to gain certain remedies or to pursue certain claims, as illustrated by the 96 examples listed in Allstate’s brief. Apps. to Brief for Respondent. The Court’s "one-size-fits-all” reading of Rule 23, ante, at 399, likely prevents the enforcement of all of these statutes in diversity actions— including the numerous state statutory provisions that, like § 901(b), attempt to curb the recovery of statutory damages. See, e. g., Cal. Civ. Code Ann. § 2988.5(a)(2) (West 1993); Colo. Rev. Stat. Ann. § 12-14.5-235(d) (2009); Conn. Gen. Stat. § 36a~683(a) (2009); Haw. Rev. Stat. § 489-7.5(b)(l) (2008); Ind. Code § 24-4.5-5-203(a)(2) (West 2004); Ky. Rev. Stat. Ann. § 367.983(l)(c) (West 2006); Mass. Gen. Laws, ch. 167B, § 20(a)(2)(B) (West 2008); Mich. Comp. Laws Ann. §493.112(3)(c) (West 2005); N. M. Stat. Ann. § 58-16-15(B) (2007); Ohio Rev. Code Ann. § 1351.08(A) (Lexis 2006); Okla. Stat., Tit. 14A, §5-203(1) (West 2007 Supp.); Wyo. Stat. Ann. §40-19-119(a)(iii) (2009).

 Shady Grove’s argument that § 901(b) is procedural based on its possible application to foreign claims is also out of sync with our Erie decisions, many of them involving state statutes of similarly unqualified scope. The New Jersey law at issue in Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541 (1949), for example, required plaintiffs to post a bond as security for costs in “any [stockholder’s derivative] action.” Id., at 544, n. 1 (quoting 1945 N. J. Laws ch. 131 (emphasis added)). See also, e. g., Walker, 446 U. S., at 742-743, and n. 4 (Oklahoma statute deemed “[a]n action” commenced for purposes of the statute of limitations upon service of the summons (quoting Okla. Stat., Tit. 12, § 97 (1971)). Our characterization of a state statute as substantive for Erie purposes has never hinged on whether the law applied only to domestic causes of action. To the contrary, we have ranked as substantive a variety of state laws that the state courts apply to federal and out-of-state claims, including statutes of limitations and burden-of-proof prescriptions. See infra, at 455-456.

 In contrast, many “state rules ostensibly addressed to procedure,” ante, at 404 (majority opinion) — including pleading standards and rules governing summary judgment, pretrial discovery, and the admissibility of *457 certain evidence — would not so hugely impact forum choices. It is difficult to imagine a scenario that would promote more forum shopping than one in which the difference between filing in state and federal court is the difference between a potential award of $500 and one of $5 million.

 There is no question that federal courts can “give effect to the substantive thrust of [§ 901(b)] without untoward alteration of the federal scheme for the trial and decision of civil cases.” Gasperini, 518 IX S., at 426. There is no risk that individual plaintiffs seeking statutory penalties will flood federal courts with state-law claims that could be managed more efficiently on a class basis; the diversity statute’s amount-in-controversy requirement ensures that small state-law disputes remain in state court.

 It remains open to Congress, of course, to exclude from federal-court jurisdiction under CAFA, 28 U. S. C. § 1332(d), claims that could not be maintained as a class action in state court.